McTEAGUE, Dolores, herself and on behalf of her minor children David and Allen, Appellant,

v.

SOSNOWSKI, Margaret, Individually and as the Commissioner of Philadelphia Department of Public Welfare; Boykin, Herbert, Individually and as the Director, Social Services of the Philadelphia Department of Public Welfare; Hoppes, Ronald, Individually and as a Caseworker with the Philadelphia Department of Public Welfare; Wright, Juanita, Individually and as a Supervising Caseworker with the Philadelphia Department of Public Welfare; O'Bannon, Secretary, Pennsylvania Department of Public Welfare.

No. 79–1383.

United States Court of Appeals, Third Circuit.

Argued Nov. 16, 1979.

Decided March 25, 1980.

Richard J. Gold, Ann Shalleck (argued), Stephen F. Gold, Community Legal Services Law Center North Central, Philadelphia, Pa., for appellant.

Carl Vaccaro, Asst. Atty. Gen., John O. J. Shellenberger, 3rd, Deputy Atty. Gen., Eastern Regional Director, Edward G. Biester, Jr., Atty. Gen., Philadelphia, Pa., for appellee O'Bannon.

Mary Rose Cunningham (argued), Edward V. Schulgen, Asst. City Sol., Dept. of Public Welfare, Philadelphia, Pa., for appellees Sosnowski, Boykin, Hoppes and Wright.

Before GIBBONS, A. LEON HIGGINBOTHAM, Jr., and SLOVITER, Circuit Judges.

## OPINION OF THE COURT

A. LEON HIGGINBOTHAM, Jr., Circuit Judge.

Federal courts have served as a haven for children and families when well-meaning government authorities injure them in violation of constitutional and statutory rights. Pursuing this long revered tradition Dolores McTeague sought relief in the federal courts, alleging that her family's "fundamental rights to family integrity" had been destroyed. The district court dismissed her action, acting under the aegis of a federal statute that provides for the early dismissal of frivolous or malicious in forma pauperis complaints, 28 U.S.C. § 1915(d). Whether or not she will be successful ultimately in pursuing her claim, the claim is neither frivolous nor malicious. We will therefore reverse the order of the district court and will remand for further proceedings.

### I.

The McTeague family problems were first brought to the attention of state authorities in October 1977 when Dolores McTeague, concerned because of her husband's drug consumption and his violence towards her and two of her three children, sought and obtained help from the Philadelphia Police Department.[1] In December, as a result of her actions, a hearing was held in the Pennsylvania Court of Common Pleas to decide whether state intervention would be necessary to protect the two children, David and Allen. The court ordered that David and Allen should remain with their mother,[2] that the father should receive psychiatric treatment, and that the case would remain within the protective supervision of the Family Court.

The next few months were difficult for the McTeague family. Mrs. McTeague, separated from her husband, was unable to locate suitable housing for herself and her three children. In April 1978 she sought social service help from the Medical College of Pennsylvania. At the suggestion of a social worker with the Medical College, she went to the Philadelphia Department of Public Welfare (DPW) to arrange for temporary foster care for all three of her children. Based on assurances from DPW that her children would be returned whenever she found suitable housing, she signed a voluntary placement agreement. She was

1. Because the district court dismissed the action before receiving papers from the defendants, our summary of the facts is based upon the plaintiff's complaint and the briefs filed in this court. *See Souder v. McGuire*, 516 F.2d 820, 821 (3d Cir. 1975).

2. The third child, Brian, Jr., was not the subject of these proceedings since he had not been abused by his father. Brian, Jr. is not a party to this suit.

told that as a condition of the placement she would have to relinquish her children for a minimum of six months. Knowing no alternative, she submitted to the requirement.

In May 1978, the Family Court held a hearing on the continued supervision of David and Allen. Apparently this hearing was not scheduled in response to the voluntary foster placement, but was the result of the supervision ordered in December 1977. Nevertheless, the voluntary foster placement was the subject of the proceedings and was the basis of that court's decision to order David and Allen "dependent," thereby removing them from Mrs. McTeague's custody. The two children were committed to the custody of DPW.

In September, just before the expiration of the six month period, Mrs. McTeague informed DPW that she had located suitable housing and wished to have her children back. Although DPW acknowledged that the two problems which had led to the dependency order—her housing problem and the father's abusive behavior—had been solved, her requests were denied without explanation.[3]

In January 1979 she filed a complaint in federal court on behalf of herself, David, and Allen. Requesting permission to proceed *in forma pauperis*, she sought to challenge two aspects of the Commonwealth's actions. First, she asserted that the Commonwealth had not provided her with adequate assistance once it had decided to intervene in the family's affairs. She alleged, *inter alia*, that alternatives to foster care which were less intrusive on the family had not been explored, that no effort had been made to preserve or unite the family,

and that no supportive services which may have strengthened the family had been provided. Second, she attacked the adjudicatory process in which she lost legal custody of two of her children. She alleged that she had been denied the right to counsel because she was not represented by counsel at either the December 1977 or the May 1978 hearing and that at neither hearing had she made a knowing and voluntary waiver. She also alleged that she had not been given her due process right of notice because she was not told that her own actions would be the subject of the hearings. She asserted that the Commonwealth acted in violation of the First and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983; in violation of Title XX of the Social Security Act, 42 U.S.C. §§ 1397–1397f, Title IV the Social Security Act, 42 U.S.C. §§ 601–622, and federal regulations implementing these statutes; in violation of the Pennsylvania Juvenile Act, Pa.Stat.Ann. tit. 11, §§ 50–101—50–337 (Purdon);[4] and in violation of her common law rights. She named as defendants numerous city and state officials who she claimed were responsible for the violations of these rights. She sought declaratory, injunctive, and monetary relief.

Before receiving an answer from any of the defendants or receiving briefs from any of the parties, the district court granted her request to proceed *in forma pauperis* and dismissed the complaint *sua sponte*. The court adopted a Magistrate's Report which had urged dismissal, citing abstention principles outlined in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977), and *Salvati v. Dale*,

---

**3.** There is no suggestion from the record that Mrs. McTeague had abandoned her children during the period they were in foster care. Indeed, among her complaints is her objection to the state's restrictions on her visitation rights. For example, she alleges that she was forced to agree to a three month moratorium on visits with her son Allen because DPW threatened to place Allen in a "less desirable foster home" if she did not agree to a reduc-

tion. Plaintiff's Complaint, ¶¶ 56, 57, *reproduced in* App., at 11a.

**4.** Although the complaint alleges violations of the Pennsylvania Juvenile Act, we note that this Act was repealed by the Act of April 28, 1978, P.L. 202 No. 53, and was reenacted in an amended form. The reenactment is codified at Pa.Stat.Ann. tit. 42 §§ 6301–6365 (Purdon 1979 Supp.).

364 F.Supp. 691 (W.D.Pa.1973). Mrs. McTeague appeals from the dismissal.[5]

## II.

■ Since 1892, when the predecessor to 28 U.S.C. § 1915 was enacted,[6] the doors of the federal courts have been open to the poor and the rich alike. Under this statute an indigent individual may initiate a claim or defend his life or property, without an obligation to pay the court costs that most parties must bear, and in some instances with the assistance of court-appointed counsel. With Section 1915 Congress has guaranteed "that no citizen shall be denied an opportunity to commence, prosecute, or defend an action . . . solely because his poverty makes it impossible for him to pay or secure the costs" of litigation. *Adkins v. E. I. DuPont de Nemours & Co., Inc.*, 335 U.S. 331, 342, 69 S.Ct. 85, 90, 93 L.Ed. 43 (1948).

For many, Section 1915 has been the only route to justice and our courts have long honored *in forma pauperis* complaints. Some *in forma pauperis* cases have restructured the fundamental framework for our system of justice. *See, e.g., Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). *See generally* Lewis, *Gideon's Trumpet* (1964) (outlining the history of the *Gideon* decision); The Foundation of the Federal Bar Association, *Equal Justice Under Law*, 95, 105 (1965). *Cf.* Sup. Ct.R. 53.

■ When Congress opened the door to *in forma pauperis* petitions, it was concerned that the removal of the cost barrier might result in a tidalwave of frivolous or malicious motions filed by persons who gave no pause before crossing the threshold of the courthouse door. Concerned not only with the court congestion which might result, but also with the financial burden the public would have to bear because of these

claims, Congress included in Section 1915 a provision permitting the early dismissal of some claims. *Fletcher v. Young*, 222 F.2d 222, 224 (4th Cir.), *cert. denied*, 350 U.S. 916, 76 S.Ct. 201, 100 L.Ed. 802 (1955). Thus, Section 1915(d) states that "the court . . . may dismiss the case if . . . satisfied that the action is frivolous or malicious."[7] This provision does not, however, permit a cursory treatment of meritorious complaints. When a viable complaint is filed *in forma pauperis*, the pauper must be treated like all other litigants in the decision to dismiss. Otherwise, the scales of justice will be tilted against those who by the coincidence of life are poor.

■ In this case the district court dismissed Mrs. McTeague's complaint before receiving answers from the defendants and before briefing, reasoning that under *Younger v. Harris* the claims should be adjudicated in a state forum. We do not agree that the answer to the choice of forum issue was so obvious that dismissal was warranted under Section 1915(d). It is unquestionably true that a dismissal referring to the constitutional and statutory claims raised by Mrs. McTeague's complaint would not have met the Section 1915(d) requirement of frivolity or maliciousness. A dismissal on *Younger v. Harris* grounds is a disposition on the merits of a claim for equitable relief and is no more appropriate for summary treatment than any other disposition on the merits. No fair reading of the cases would suggest that Mrs. McTeague's claim was frivolous.

First, our federal courts have been used by countless numbers of plaintiffs who have challenged state intrusions into the family unit. Many of these plaintiffs have been successful in establishing that the challenged state intrusion violated federal constitutional law or federal statutory law. *E.*

---

5. She no longer pursues her request for injunctive relief, because her children were returned during the pendency of this appeal.

6. The original provision was enacted by the Act of July 20, 1892, Pub.L.No.209, 27 Stat. 252.

7. 28 U.S.C. § 1915(d) provides in full:

   (d) The court may request an attorney to represent any such person unable to employ counsel and may dismiss the case if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

g., *Pierce v. Society of Sisters*, 268 U.S. 510, 45 S.Ct. 571, 69 L.Ed. 1070 (1925) (state may not prevent parents from enrolling their children in private schools); *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (state must provide unwed father a hearing before denying him custody of his child after the mother's death); *Shea v. Vialpando*, 416 U.S. 251, 94 S.Ct. 1746, 40 L.Ed.2d 120 (1974) (AFDC program giving standardized treatment of employment expenses conflicts with federal statute's work incentive); *King v. Smith*, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) (state regulations denying AFDC benefits to children whose mother "cohabits" with a man not obligated to provide for their support are invalid).

Second, it is not obvious whether the abstention principles on which the district court relied are applicable to this case. Indeed at the time the district court dismissed the complaint, February 1979, the issue was even more difficult. At that time the legal community was seriously debating the extent to which *Younger v. Harris* should be applied to civil cases. While the Supreme Court's decisions in *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975), *Juidice v. Vail* and *Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977), presaged a broad view of the abstention doctrine, some lower courts had refused to abstain in certain civil contexts. *E. g., New Jersey Education Association v. Burke*, 579 F.2d 764 (3d Cir.) *cert. denied* 439 U.S. 894, 99 S.Ct. 252, 58 L.Ed.2d 239 (1978). Indeed, six days after the McTeague complaint was dismissed, the Supreme Court heard oral argument in a challenge to a decision by a distinguished three-judge panel in Texas which had refused to abstain from considering a similar case brought in a child abuse context. *Sims v. Dept. of Public Welfare of the State of Texas*, 438 F.Supp. 1179 (S.D.Texas 1977),

later reversed, *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979).

█ In June 1979, in a 5–4 decision, the Supreme Court reversed the three-judge panel. While the subsequent reversal certainly resolves much of the abstention debate, it in no way affects the issue of the difficulty of the abstention question *at the time the district court acted.* It only suggests that the three-judge panel, after struggling with a difficult question, did not reach the "proper" conclusion, and that abstention questions raised after June 1979 may be more easily resolved. Certainly a litigant who makes a claim which is supported by a decision of such distinguished jurists should not have her suit categorized as one which is so frivolous that it warrants dismissal under Section 1915(d).[8]

Third, dismissal under Section 1915(d) is inappropriate, even in light of the reversal in *Moore v. Sims*, because a number of factual and legal issues are unresolved and they must be addressed before there can be any decision on abstention. For example, the parties are in dispute about whether there is a state proceeding pending or whether the Family Court's order was final. *Younger v. Harris* and *Moore v. Sims* rely heavily on the existence of a pending state proceeding which might be interfered with by a federal court order. If no proceeding is pending, these comity concerns are not implicated and federal action would be appropriate. *See Wooley v. Maynard*, 430 U.S. 705, 97 S.Ct. 1428, 51 L.Ed.2d 752 (1977) (Prior state proceeding does not preclude litigation of federal court suit seeking prospective declaratory and injunctive relief). It is also not clear whether, even if pending, the state proceeding would bar federal action. The appellant argues that she can neither challenge the procedures

---

**8.** Though it is a well-recognized principle that we, as an appellate court, are "to apply the law in effect at the time [we] render [our] decision, unless doing so would result in manifest injustice or there is statutory direction or legislative history to the contrary." *Bradley v. School Board of City of Richmond*, 416 U.S. 696, 711,

94 S.Ct. 2006, 2016, 40 L.Ed.2d 476 (1974), a plaintiff's claim cannot be dismissed as frivolous when at the time of the trial judge's decision many judges had expressed in their written opinions that the plaintiff's views were correct.

used at either the December or May hearing in the state proceeding nor can she raise the challenge to the quality of the placement which has already taken place. She asserts that at most she can address the issue of her children's future commitment and custody. If deference to the state proceeding means that she will be unable to raise her concerns, abstention may be inappropriate. *Cf. Moore v. Sims,* 99 S.Ct. at 2378 (holding that abstention in a child abuse case was appropriate where the issues raised by the plaintiff's complaint could have been raised in a pending state action). Thus, the district court erred by dismissing the complaint before it had answers to these questions.

On remand the abstention issue will be further complicated because the Commonwealth has returned David and Allen to Mrs. McTeague during this appeal. As a result, Mrs. McTeague has now abandoned her request for injunctive relief and seeks only declaratory and monetary relief. This change has not affected our decision, and of course played no part in the district court's initial decision. However, it must be considered on remand as the abstention doctrine deals primarily with actions where injunctive relief was requested.

In conclusion, we hold that the district court erred by finding Mrs. McTeague's complaint appropriate for dismissal under Section 1915(d). We will therefore reverse and remand for further proceedings consistent with this opinion.

Costs shall be borne by the appellees.