No. 79–2014. ANDERSON ET AL. v. WINSETT. C. A. 3d Cir. Motion of respondent for leave to proceed *in forma pauperis* granted. Certiorari denied. THE CHIEF JUSTICE would grant certiorari and reverse the judgment summarily.

JUSTICE WHITE, with whom JUSTICE REHNQUIST joins, dissenting.

In *Greenholtz* v. *Nebraska Penal Inmates,* 442 U. S. 1, 12 (1979), we held that a Nebraska statute created an "expectancy of release [on parole]" that was "entitled to some measure of constitutional protection." The Nebraska statute provided in part:

> "Whenever the Board of Parole considers the release of a committed offender who is eligible for release on parole, it *shall* order his release *unless* it is of the opinion that his release should be deferred because:
>
> "(a) There is a substantial risk that he will not conform to the conditions of parole;

"(b) His release would depreciate the seriousness of his crime or promote disrespect for law;

"(c) His release would have a substantially adverse effect on institutional discipline; or

"(d) His continued correctional treatment, medical care, or vocational or other training in the facility will substantially enhance his capacity to lead a law-abiding life when released at a later date." [1]

We emphasized that our decision rested on the "unique structure and language" of the Nebraska statute and cautioned that whether any other state statute created a liberty interest would have to be decided on a case-by-case basis. *Ibid.*

In this case respondent, a Delaware state prisoner, filed suit against petitioners, state prison officials, alleging that petitioners violated his due process rights when they denied him work release. The Court of Appeals for the Third Circuit examined the Delaware statutory provisions and regulations governing work release programs in light of *Greenholtz* and concluded that a liberty interest was implicated when respondent was denied work release. The court conceded that Delaware prison officials exercise substantial discretion in making work release decisions but concluded that their discretion is not unbounded. It determined that under Delaware law prison officials must exercise their discretion "consistently with the purpose and policy behind work release." [2] The court also observed that the State had established "an elaborate institutional system" for processing work release applications.[3] Two separate committees must evaluate the inmate's fitness for work release and recommend that work release be granted before the inmate's application may be sub-

---

[1] Neb. Rev. Stat. § 83–1,114 (1) (1976) (emphasis added). See *Greenholtz* v. *Nebraska Penal Inmates,* 442 U. S., at 11.

[2] *Winsett* v. *McGinnes,* 617 F. 2d 996, 1007 (1980) (en banc).

[3] *Id.,* at 1006.

mitted to the prison superintendent. In light of this three-tier review system, the court concluded that the superintendent could not reject work release applications for reasons that were unrelated to the purposes of the work release program. Since Delaware prison officials do not have unlimited discretion to deny work release to an inmate who meets the basic criteria for eligibility, the Court of Appeals held that under *Greenholtz* respondent had established an "expectancy of [work] release" that was entitled to constitutional protection.[4] The court clearly rejected the view expressed in the dissenting opinion that respondent could not prevail under the standard established in *Greenholtz* since Delaware law does not provide that an eligible inmate *shall* be granted work release *unless* prison authorities determine, based on certain statutory criteria, that work release ought to be denied.

We did not expressly state in *Greenholtz* that the "shall . . . unless" language of the Nebraska statute was the critical factor underlying our determination that the statute created a liberty interest. However, other Courts of Appeals have examined parole release statutes lacking mandatory language and have concluded in light of *Greenholtz* that those statutes do not create liberty interests. See *Wagner* v. *Gilligan,* 609 F. 2d 866 (CA6 1979); *Boothe* v. *Hammock,* 605 F. 2d 661 (CA2 1979); *Shirley* v. *Chestnut,* 603 F. 2d 805 (CA10 1979).[5]

I believe this Court should grant certiorari to clarify the

---

[4] The court distinguished this case from *Meachum* v. *Fano,* 427 U. S. 215 (1976), in which we rejected the respondent state prisoners' argument that they had a constitutionally protected liberty interest in remaining in particular prisons. The state statute involved in *Meachum* permitted prison officials to transfer prisoners to other state correctional institutions "for whatever reason or for no reason at all." *Id.,* at 228.

[5] The Court of Appeals for the Ninth Circuit has stated that the presence of mandatory language is an important factor to be considered in determining whether a statute creates a liberty interest. *Bowles* v. *Tennant,* 613 F. 2d 776, 778 (1980).

implications of the *Greenholtz* decision by considering whether the Delaware statute and regulations involved in this case created a constitutionally protected liberty interest.

