**Andrew Maurice REDWOOD, Appellant,**

v.

**COUNCIL OF THE DISTRICT OF COLUMBIA, et al.**

**No. 81–1632.**

United States Court of Appeals, District of Columbia Circuit.

Argued April 21, 1982.

Decided May 28, 1982.

Louis R. Moffa, Jr.*, with whom Steven H. Goldblatt, Philadelphia, Pa. (appointed by this Court) and Samuel Dash, Wash-

* Student counsel pursuant to Local Rule 20.

ington, D. C., were on the brief, for appellant.

Diana M. Savit, Asst. Corp. Counsel, with whom Judith W. Rogers, Corp. Counsel, and Charles L. Reischel, Deputy Corp. Counsel, Washington, D. C., were on the brief, for appellees.

Before MIKVA and GINSBURG, Circuit Judges, and EDMUND L. PALMIERI,** United States Senior District Judge for the Southern District of New York.

PER CURIAM:

Andrew Maurice Redwood appeals from the dismissal by the district court sua sponte of his pro se complaint. The complaint arises from events at the Lorton Correctional Complex in November 1978. Neither the allegations of the complaint nor the district court's reasons for dismissal are precisely clear. We affirm the district court's action, but we do so with deep concern about the procedures followed by the district court.

Because of the posture of this case, the district court had to accept as true the following allegations of the pro se complaint. Redwood entered the Lorton Correctional Complex in October 1978. As a diabetic, he received daily doses of insulin and fluid pills, the latter to relieve swelling in his joints. The insulin was administered only in the Lorton infirmary, which is located in a medium security area of the correctional center. Because Redwood was placed in maximum security, Lorton guards refused to take him to the infirmary unless he wore leg irons. In November 1978, Redwood exhausted his supply of fluid pills and requested a renewal of the prescription. His request was denied by a Medical Training Assistant because his name "was not on the list for renewal." The lack of fluid pills caused Redwood's ankles to swell, and this in turn caused severe pain and further swelling when Redwood wore the leg irons. Redwood submitted to wearing the irons on his trip to the infirmary for sixteen days.

On November 29, 1978, however, he refused to wear the shackles; Lorton guards therefore refused to take him to the infirmary, and he received no insulin that day.

Redwood has filed two separate actions arising from these facts. In September 1979, he filed a pro se complaint in the district court against a number of correctional officials, charging that he had been subjected to cruel and unusual punishment within the meaning of the Eighth Amendment and that defendants had breached their duty of care owed him pursuant to D.C.Code § 24–442. This action, CA No. 79–2614 (1979 complaint), was dismissed by the district court on September 27, 1979, "without prejudice to file in Superior Court." Redwood did not appeal, nor did he proceed in the local court.

In May 1981, Redwood again filed suit in the district court, naming the same defendants but adding the Mayor and the Council of the District of Columbia in addition. The factual allegations were almost identical to those in the 1979 complaint. In this action, however, Redwood dropped the explicit claim that his federal rights had been violated, and no longer invoked jurisdiction pursuant to 28 U.S.C. §§ 1331, 1361. Instead, Redwood cited only D.C.Code § 11–501(4), and described his action as an effort to recover damages for defendants' negligence and failure to train and supervise Lorton medical officers adequately. Redwood added, however, that

> such failure deprivate plaintiff of essential medical care, in which led to intentional deprivation of essential medical care with specific intent to cause harm to the plaintiff. That cause inrepairable harm to my life and added to the suffering already suffer do to plaintiff medical condition.

CA No. 81–1226, ¶ 2 [sic] (1981 complaint).

The district court granted Redwood leave to file his 1981 complaint without prepayment of costs, but simultaneously dismissed the complaint sua sponte, effectively causing Redwood's complaint to be dis-

---

** Sitting by designation pursuant to 28 U.S.C.  § 294(d).

missed before it was actually filed with the clerk of the court. The district court's statement, in its entirety, was the following: "Dismissed. See CA 79–2614 [the 1979 complaint]. See also 79–2615[,] 80–0790." CA No. 79–2615 and CA No. 80–0790 were petitions for writs of habeas corpus also filed earlier by Redwood, and subsequently dismissed.

## ISSUES ON APPEAL

Redwood contends that the district court must have dismissed his complaint for lack of subject matter jurisdiction, because this was apparently the basis for the earlier dismissal of the 1979 complaint. He argues that this was erroneous because the complaint alleged a federal constitutional tort under *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) ("deliberate indifference to serious medical needs"). Although Redwood concedes that he "did not specifically name 28 U.S.C. § 1331 as the jurisdictional foundation," Brief for Appellant at 12, he urges that "the complaint is not so devoid of legal merit on its face that federal-question jurisdiction is precluded." *Id.* at 13.

■■■ Had this been the only basis for the district court's action, we would be hard pressed to agree that Redwood failed to state a claim upon which relief could be granted. It is true that "a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." *Estelle v. Gamble*, 429 U.S. at 106, 97 S.Ct. at 292. Redwood has not alleged that he informed Lorton officials of any pain he experienced during the 16 days on which he wore the leg irons even though he was not taking fluid pills. *See United States ex rel. Walker v. Fayette County*, 599 F.2d 573, 576 (3rd Cir. 1979). He has not alleged that he was denied insulin treatments at any time other than November 29, 1978, and he does not allege that he has had to continue wearing the leg irons since then

without benefit of receiving fluid pills. Accepting the allegations of the complaint as true, we are only concerned with the events of a single day almost four years ago, and at least some weight should be given to the fact that Redwood's 1981 complaint dropped the specific allegations of wrongs arising under the Constitution. At the same time, we are cognizant that a prisoner's pro se complaint is held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), and that a complaint may not be dismissed as frivolous if "any of the legal points [are] arguable on their merits." *Anders v. California*, 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 (1967).

■ We do not need to reach this question, however, because we agree with the district court that dismissal of Redwood's 1981 complaint was appropriate in light of the disposition of Redwood's 1979 complaint. After failing to appeal the district court's decision that the 1979 complaint could only be heard in the local court, Redwood may not be permitted to bring essentially the same action two years later citing a *less* obvious basis for federal jurisdiction. *See Boone v. Kurtz*, 617 F.2d 435 (5th Cir. 1980); *Segal v. American Telephone & Telegraph Co.*, 606 F.2d 842 (9th Cir. 1979). We must reject Redwood's conjecture that the 1979 complaint may have been dismissed because 28 U.S.C. § 1331 then required that the amount in controversy be greater than $10,000, a possible jurisdictional barrier that has since been "cured." *See* Pub.L.No.96–486, § 2(a), 94 Stat. 2369 (1980). Redwood's 1970 complaint sought a total of $4 million in damages, and specifically alleged that "[t]he matter in controversy exceed[s] exclusive of interest, and costs, the amount of $10,000, as will hereinafter more fully appear."

■ We therefore affirm, but we must also express continued concern at the procedures followed by the district court in dismissing Redwood's complaint sua sponte, and with a statement of reasons that is terse at best. We realize that the district

court acted prior to our decision in *Crisafi v. Holland*, 655 F.2d 1305 (D.C.Cir.1981), where we underscored the value of a clear statement of reasons by the district court when dismissing a complaint as "frivolous or malicious" under 28 U.S.C. § 1915(d) or when denying leave to proceed on appeal *in forma pauperis.* Such statements, we emphasized, ensure that the district court "has fully considered the complaint and the applicable law," and thus help "avoid unnecessary remands." *Id.* at 1310. Although this case arises in a somewhat different posture, it too illustrates the benefit that would be served if the district court did more than simply "note[ ] in the margin the civil action numbers" of earlier cases filed by the same prisoner. *Id.* at 1306. Such a practice encourages frequently unmeritorious appeals; it may needlessly consume the time of litigants, the court of appeals, and ultimately the district court as well. We must also observe that sua sponte dismissal would almost always seem less preferable than requiring at least some responsive answer from the government entity or official named as defendant or respondent in these cases. Counsel for the appellee stated in oral argument that the District of Columbia was not even aware of Redwood's action until it was notified of his appeal. Had we to reach the question whether Redwood had stated a claim for relief properly invoking federal jurisdiction, our task would be greatly facilitated by the existence in the record of some responsive pleading. It is clear that in some circumstances, the medical care given prisoners is a matter of constitutional importance. *Estelle v. Gamble.* A proper solicitude for this concern would be served by more considered process in the district court.

*Affirmed.*