**Roosevelt BRANDON, Appellant,**

v.

**DISTRICT OF COLUMBIA BOARD OF PAROLE, et al.**

**No. 83–1100.**

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 24, 1984.

Decided May 8, 1984.

Andrew J. Pincus, New York City (Appointed by this Court), with whom Gerald Goldman, Washington, D.C., was on the brief, for appellant.

Edward E. Schwab, Asst. Corporation Counsel, Washington, D.C., with whom Charles L. Reischel, Deputy Corporation Counsel, Washington, D.C., was on the brief, for appellees.

Before WALD and MIKVA, Circuit Judges, and VAN DUSEN,* Senior Circuit Judge for the Third Circuit.

Opinion for the Court filed by Circuit Judge MIKVA.

MIKVA, Circuit Judge:

■ Appellant Roosevelt Brandon filed a *pro se* complaint seeking declaratory, injunctive, and monetary relief against the District of Columbia Board of Parole (the Board) and its individual members for alleged violations of 42 U.S.C. § 1983. Brandon claimed that the District of Columbia parole process is subject to the due process clause of the Fifth Amendment and that the Board's delay in considering his case, its failure to supply adequate reasons for its parole decisions respecting him, and its failure to reparole him in the same time period in which other similarly situated prisoners were reparoled violated his constitutional rights. The district court granted Brandon leave to proceed *in forma pau-*

---

* Sitting by designation pursuant to Title 28 U.S.C. § 294(d).

*peris* but then dismissed the complaint *sua sponte* before it was served on the defendants. We reverse that *sua sponte* dismissal and remand for fuller consideration of the merits of his claim. As we have repeatedly emphasized, *sua sponte* dismissal of a *pro se* complaint is warranted only when a prisoner's claim is "frivolous" or "malicious," 28 U.S.C. § 1915(d), and this is clearly not such a case.

Brandon is not a sympathetic plaintiff. In 1966 he was convicted of murder and sentenced to a term of ten to thirty years. He was paroled in April 1975. Shortly after that, on November 11, 1975, he was arrested and charged with the offense of rape while armed. He pleaded guilty to that charge and received a consecutive sentence of ten to thirty years. Prior to the imposition of this sentence, the Board revoked Brandon's original parole. Because Brandon's second sentence was to be consecutive with his first, he could not begin serving his second term until he had served out his time on the first sentence or was reparoled on the first conviction. Brandon came before the Board for reparole five times between November 15, 1976 and February 21, 1980 before he was finally reparoled.

Brandon alleged that the average parole violator in his circumstances would have been reparoled in twenty-four months rather than the nearly four year wait to which he was subjected. Specifically, Brandon asserted that the failure to reparole him before 1980 "departed from Board rules and regulations and/or customary reparoling policy ...." Record Excerpts at 7. As part of his prayer for relief, Brandon asked for an order that the Board amend his certificate of parole to reflect reparole after twenty-four months. He also sought punitive and compensatory damages against the Board members.

The district court dismissed the action *sua sponte* with the following terse statement:

> Dismissed. States no cause of action. Parole Board is completely justified in getting all the information it can get on a

prisoner who has been convicted of murder and rape while armed.

As this statement reveals and as the Board admits, "the District Court appeared to be less concerned with appellant's [constitutional claims] than with the nature of his crimes." Appellee Brief at 5. The fact that Brandon is not a sympathetic plaintiff, however, does not justify suspending the Constitution with respect to him. Because Brandon's complaint cannot be labelled frivolous or malicious, the Board should be required to answer Brandon's complaint, and the district court should, after whatever fact finding proves necessary, address the merits of the substantial constitutional questions presented by this case.

### DISCUSSION

■ Brandon's complaint was brought into federal court under the auspices of 28 U.S.C. § 1915, which authorizes federal courts to entertain actions *in forma pauperis* in an effort to assure that "no citizen shall be denied an opportunity to commence, prosecute, or defend an action, civil or criminal, 'in any court of the United States' solely because his poverty makes it impossible for him to pay or secure the costs." *Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 342, 69 S.Ct. 85, 90, 93 L.Ed. 43 (1948). At the same time that it sought to lower judicial access barriers to the poor, Congress was also concerned that opening the courthouse doors at no cost might lead to a flood of insubstantial or malicious lawsuits. In response to this concern, Congress included in Section 1915 a provision allowing early dismissal of those claims which "the court ... is satisfied [are] frivolous or malicious." 28 U.S.C. § 1915(d). As the Third Circuit has cogently explained, however, this provision does not "permit a cursory treatment of meritorious complaints. When a *viable* complaint is filed *in forma pauperis*, the pauper must be treated like all other litigants in the decision to dismiss." *McTeague v. Sosnowski*, 617 F.2d 1016, 1019 (3d Cir.1980) (emphasis added). The discretion to dismiss *sua sponte* "may not be exer-

cised arbitrarily and is limited ... in every case by the language of the statute itself which restricts its application to complaints found to be 'frivolous or malicious.'" *Boyce v. Alizaduh*, 595 F.2d 948, 951 (4th Cir.1979).

In this case, there is nothing in the complaint itself or in the district court's summary dismissal of it to suggest that the complaint was malicious. Accordingly, the district court's *sua sponte* dismissal can be sustained only if Brandon's complaint can be styled frivolous.

This circuit has not yet defined with precision the test for frivolity under Section 1915(d). We did recognize in *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C.Cir. 1981), that "[a] court may dismiss as frivolous complaints reciting bare legal conclusions with no *suggestion* of supporting facts, or postulating events and circumstances of a wholly fanciful kind." (emphasis added). But under the notice theory of pleading, it is not necessary that those facts be identified with specificity in the complaint itself. If it appears that the complainant could, after discovery, offer facts which would validate the complaint, *sua sponte* dismissal is premature.

It is also true that "[a] *pro se* complaint, like any other, must present a claim upon which relief can be granted by the court." *Id.* That statement, however, cannot be taken to mean that a frivolous complaint is one which could not survive a Rule 12(b)(6) motion to dismiss. On the contrary, the test for frivolity cannot be the same as the test for whether a complaint would survive a 12(b)(6) motion to dismiss. When a Rule 12(b)(6) motion is filed, the plaintiff is put on notice that the legal sufficiency of the complaint is being challenged and is often given some insight into the theory upon which that challenge is made. The plaintiff then has an opportunity to develop his claim further by filing an opposition to the Rule 12(b)(6) motion. Alternatively, the plaintiff may seek to show that decision on the motion would be premature before the facts were further drawn out through discovery. Neither of these opportunities, nor the sharply honed adversarial exchange involved in a Rule 12(b)(6) motion and opposition, are present when dismissal is *sua sponte*. *Sua sponte* dismissal is therefore a much more truncated process .than is dismissal under Rule 12(b)(6). In giving effect to the intent with which Congress created the narrow exception in section 1915(d) for *sua sponte* dismissals, this difference must be taken into account. Accordingly, we hold that a complaint need not indisputably state a cause of action to survive *sua sponte* dismissal; instead, if the complaint has at least *an arguable* basis in law and fact—if the complaint is *viable*—it cannot be deemed frivolous. *See Watson v. Ault*, 525 F.2d 886 (5th Cir.1976) (adopting same standard); *cf. Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) (defining frivolous appeal as one without "arguable" merit). Instead, the filing of responsive papers should be required and the normal course of litigation pursued. Following this course assures that proper adversarial attention is paid to the question whether a cause of action exists and facilitates appellate review of this question. This is particularly true when the existence *vel non* of the cause of action depends on the resolution of factual issues. If discovery and the creation of an evidentiary record could affect disposition of the legal questions raised, *sua sponte* dismissal is wholly unwarranted. Dismissal of *pro se* suits under the frivolous standard must therefore be reserved for those cases in which there is indisputably absent any factual and legal basis for the asserted wrong.

Judged by these standards, Brandon's complaint was improperly shortcircuited. One of Brandon's allegations was that he had been denied "due process of law because the Defendants ... have violated normal parole custom and adjective rules and regulations." Record Excerpts at 4. The complaint developes this allegation further when it states that "the Board's stated reasons for this denial were defective and the decisions departed from Board rules and regulations and/or customary reparol-

ing policy, that is, Plaintiff had served the average violator time required by the Board." *Id.* at 7. As his appointed counsel points out on appeal, construed under the liberal rules applicable to *pro se* pleadings, *see Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 595–96, 30 L.Ed.2d 652 (1972), these allegations can be characterized as presenting a claim under equal protection principles, especially in light of the fact that, with respect to the District of Columbia, those principles are incorporated in the Due Process Clause itself, *Bolling v. Sharpe,* 347 U.S. 497, 499, 74 S.Ct. 693, 694, 98 L.Ed. 884 (1954). This equal protection claim is clearly substantial enough to survive *sua sponte* dismissal.

A prisoner need not always allege the presence of a suspect classification or the infringement of a fundamental right in order to state a claim under the equal protection component of the Fifth Amendment. Even in the absence of a fundamental right or a suspect classification, equal protection requires that a classification between similarly situated individuals bear some rational relationship to a legitimate state purpose. *Schweiker v. Wilson,* 450 U.S. 221, 230, 101 S.Ct. 1074, 1080, 67 L.Ed.2d 186 (1981). That does not suggest that courts are empowered to interfere excessively with the wide latitude prison officials must be accorded in the administration of prison affairs, *Cruz v. Beto,* 405 U.S. 319, 321, 92 S.Ct. 1079, 1081, 31 L.Ed.2d 263 (1972). Nor does it require us today to decide whether "random acts of government misconduct," in the form of departures from statistically generated parole probabilities, in and of themselves constitute cognizable equal protection claims. *See Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 438, 102 S.Ct. 1148, 1159, 71 L.Ed.2d 265 (1981) (Blackmun, J., concurring). Equal protection does require at the least, however, that the state act "sensibly and in good faith," *id.* at 439, 102 S.Ct. at 1159–60; parole decisions, like all other forms of state action, cannot be based on impermissible purposes. Yet liberally construed, Brandon's complaint in fact suggests that the Board purposefully singled him out for harsher treatment than that accorded to similarly situated prisoners. For example, the complaint claims that it was "dilatory" for the Board twice to postpone decision on the merits of Brandon's reparole. That assertion could be taken to suggest that the Board intentionally delayed acting on Brandon's case simply to punish him rather than to obtain sufficient information about him to make an intelligent parole decision. Similarly, the allegation that the Board's reasons for refusing to reparole Brandon at a May 1, 1979 hearing "violated Plaintiff's rights" can be construed to assert that the Board's refusal was based on illegitimate purposes.

The situation thus described is much the same as that in *Durso v. Rowe,* 579 F.2d 1365 (7th Cir.1978). There a prisoner alleged that prison officials had violated equal protection by revoking his work-release status without affording him the same kind of hearing allegedly given to other participants in the program. In reversing the district court's dismissal for failure to state a claim, the Seventh Circuit first noted that a § 1983 complaint, as is Brandon's complaint, need not identify with particularized facts the class of which he is allegedly a part; instead that task is to be left to discovery or to resolution on a Rule 12(e) motion for a more definite statement. The Seventh Circuit then went on to hold: "The defendants may be able to establish the rationality of treating plaintiff differently. But a court ought not dismiss an equal protection claim on the basis of reasons unrevealed to the court. The state must come forward and identify the legitimate state interest being furthered." *Id.* at 1372 (citations omitted). *Accord Ciechon v. City of Chicago,* 686 F.2d 511, 523–24 (7th Cir.1982) (employee discharge); *Williams v. Taylor,* 677 F.2d 510, 516–17 (5th Cir.1982) (disenfranchisement); *Ziegler v. Jackson,* 638 F.2d 776 (5th Cir.1981) (discharge of police officer); *Stringer v. Rowe,* 616 F.2d 993, 997–98 (7th Cir.1980) (interprison transfer); *Jones v. Lane,* 568 F.Supp. 1113, 1116 (N.D.Ill.1983) (placement in prison work release program).

Brandon's equal protection claim is thus potentially meritorious, and his complaint sufficiently apprised the defendants of this claim that they should have been required to prepare an answer or otherwise plead, *see Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); it was error to have dismissed the complaint *sua sponte* and thereby to cut short the normal course of litigation. Typically, this course would include the filing of an answer by the government followed by a response from Brandon in which he sought to establish that a cause of action was stated under the facts of his case or to amend his complaint so that it did state a cause of action. Should pertinent material facts remain in dispute after these exchanges, discovery could also be warranted. We therefore need not and do not hold that the equal protection claim actually states a cause of action to hold that, since it is sufficiently plausible that the claim could state a cause of action, the government must for now prepare at least an answer. We therefore reverse the *sua sponte* dismissal of Brandon's equal protection claim.

In light of our disposition of the equal protection claim, we also choose to remand Brandon's procedural due process claims without deciding whether those claims state a cause of action. We note, however, that those claims raise substantial issues of first impression in this circuit. Whether due process guarantees apply to parole or reparole decisions depends as a threshold matter on whether the District of Columbia parole system creates a liberty interest in parole. *See Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7, 99 S.Ct. 2100, 2103, 60 L.Ed.2d 668 (1979) (liberty interests in parole do not arise from Constitution and must therefore be grounded in state or local law). Brandon argues that the parole statute, 24 D.C.Code § 204(a), the Board's regulations adopted to carry out that statute, D.C.R. & Regs. tit. 9, ch. 2 § 105.1 (1982), and the customary parole practices of the Board all independently "create[ ] a protected liberty interest by placing substantive limits on official discretion."

*Olim v. Wakinekona*, 461 U.S. 238, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). We hold that each of these claims is sufficiently non-frivolous to warrant full consideration by the district court.

Brandon's statutory claim asks this circuit to enter into the fray concerning parole that has followed in the wake of the Supreme Court's holding in *Greenholtz, supra*. There the Court found that Nebraska had created a substantive liberty interest in parole by ordering that parole "shall" be granted "unless" the parole board made one of four enumerated determinations. Since *Greenholtz*, lower courts have struggled to determine whether a parole statute must be drafted in this shall/unless formulation to create a liberty interest in parole, or whether instead a statute that makes parole decisions less than wholly discretionary suffices to create such an interest. *Compare Booth v. Hammock*, 605 F.2d 661 (2d Cir.1979) (*Greenholtz* makes shall/unless formulation decisive) and *Slocum v. Georgia State Board of Pardons & Paroles*, 678 F.2d 940 (11th Cir.1982) (same) *with Winsett v. McGinnes*, 617 F.2d 996, 1007 (3rd Cir.1980), *cert. denied sub nom. Anderson v. Winsett*, 449 U.S. 1093, 101 S.Ct. 891, 66 L.Ed.2d 822 (1981) (liberty interest arises when discretionary decisions must be exercised consistently with a statutory policy that is embodied in specific criteria) (work release program) and *Bowles v. Tennant*, 613 F.2d 776, 778 (9th Cir. 1980) (describing mandatory language of *Greenholtz* as an "important" factor in creation of liberty interest). *See generally Anderson v. Winsett*, 449 U.S. 1093, 1095, 101 S.Ct. 891, 892, 66 L.Ed.2d 822 (1981) (White, J., dissenting from the denial of the petition for certiorari) (noting conflict in circuit court's interpretations of *Greenholtz* ). In the District, the relevant statute provides that the parole board, after making certain specific determinations, "may authorize" release on parole, 24 D.C. Code § 204(a) (1981); the statute does not contain the shall/unless formulation present in *Greenholtz*. Whether this statute creates a liberty interest in parole thus

requires this court to choose between the *Booth* and *Winsett* interpretations of *Greenholtz.* To be asked to make this choice between the opposing approaches of two courts of appeals can hardly be labelled a frivolous legal task. Accordingly, while we express no view on the merits of Brandon's statutory claim, the district court's *sua sponte* dismissal of that claim was inappropriate.

We also hold that further factfinding is required to determine whether the Board's regulations or its administrative practices create a liberty interest in parole. Resolution of these claims may depend upon the way in which the Board applies its regulations and upon the degree of formality with which the Board's administrative practices are embossed. While we need not decide today whether informal and merely customary administrative practices can ever give rise to a liberty interest in parole, it suffices for today's decision that such practices clearly can have such effect at least when they are sufficiently formalized. That is the import of our recent decision in *Lucas v. Hodges,* 730 F.2d 1493 (D.C.Cir. 1983), in which we held that official statements of prison policy contained in internal directives can give rise to constitutionally protected liberty interests. In light of our decision in *Lucas,* should discovery reveal that the Board exercises its parole and reparole decisions according to a set of formalized internal criteria that significantly confine official discretion, Brandon's due process claims would be considerably strengthened. Summary dismissal of the claims that the Board's regulations or its practices create a liberty interest in parole was therefore also inappropriate. Thus, we remand all of Brandon's procedural due process claims so that appellate review of these important issues can be facilitated.

Our decision today reinstates the entirety of Brandon's complaint. As a result, this case illustrates the waste of resources entailed in erroneous *sua sponte* dismissals. Because the issues on appeal potentially raised important constitutional questions, we appointed counsel to represent Brandon before this court. That counsel thoroughly briefed the relevant issues and ably argued Brandon's case. With our decision that appellate review of this case cannot take place until further proceedings below have been completed, the issues narrowed, and a fuller record compiled, it seems clear that, after remand, Brandon's theories will once more be briefed and argued to this court. Such duplicative use of appointed counsel and of this court's scarce resources is hardly sensible and could have been avoided by more considered treatment at the district court level of Brandon's complaint. For this reason, we have repeatedly sought to impress upon district judges that *"sua sponte* dismissal would almost always seem less preferable than requiring at least some responsive answer from the government entity or official named as defendant." *Redwood v. Council of the District of Columbia,* 679 F.2d 931 (D.C.Cir.1982). *Accord Bayron v. Trudeau,* 702 F.2d 43, 45 (2d Cir.1983) ("sua sponte dismissal of a pro se prisoner petition before service of process and the filing of a response by the state is strongly disfavored"). The power to dismiss *sua sponte* must be reserved for cases in which a *pro se* complaint is so frivolous that, construing it under the liberal rules applicable to *pro se* complaints, there still remains no arguable legal or factual basis upon which the complaint could go forward.

On remand, we also urge the district court to use its power under § 1915(d) to appoint counsel so that the important issues raised by Brandon's complaint will be fully aired. To minimize further duplicative effort, it may be most efficient to appoint the same counsel whom this court appointed to litigate Brandon's appeal; the same issues which have been briefed and argued on appeal will form the basis for further proceedings in the district court. The case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*