Mike HERNANDEZ, Plaintiff–Appellant,

v.

George F. DENTON, et al.,
Defendants–Appellees.

Nos. 86–2139, 87–1693 and 87–1694.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 1988.

Decided Nov. 23, 1988.

Richard W. Nichols, McDonough, Holland & Allen, Sacramento, Cal., for plaintiff-appellant.

Patricia C. Esgro, Deputy, Atty. Gen., State of Cal., Sacramento, Cal., for defendants-appellees.

Before ALDISERT,* WALLACE and SCHROEDER, Circuit Judges.

SCHROEDER, Circuit Judge:

Appellant is a prisoner proceeding in forma pauperis in suits against prison officials at a number of prisons. He appeals the district court's dismissal of three complaints as "frivolous" under 28 U.S.C. § 1915(d).

Appellant filed five pro se complaints alleging 42 U.S.C. § 1983 violations. The three complaints at issue in this appeal made the following allegations:

(1) Due process claims: Appellant alleges that he was placed in administrative segregation without written notice of the reasons, an opportunity to present evidence, an opportunity to be represented by counsel or written justification. In addition, appellant alleges that he was punished before receiving procedural due process in connection with other alleged rule violations;

(2) Eighth amendment claims other than rape claims: Appellant alleges that he had to sleep without a mattress for one night and without a blanket for an unspecified period of time. In addition, he alleges that he was not issued shoes for a month. Finally, appellant alleges physical and verbal abuse by prison officials;

(3) Rape claims: Appellant alleges that he was drugged and homosexually raped over 28 times by both inmates and prison officials at different institutions.

The district court referred all cases to a magistrate. The defendants had been served and had answered with respect to some but not all of the claims. The magistrate reviewed all claims and recommended

---

* Honorable Ruggero J. Aldisert, Senior United States Circuit Judge for the Third Circuit, sitting by designation.

that the district court dismiss them because the complaints, viewed together, indicated that appellant's rape allegations were frivolous. The magistrate did not discuss the other claims. The district court followed the magistrate's recommendation and dismissed pursuant to section 1915(d), which provides in pertinent part as follows:

> The court may dismiss [a case proceeding in forma pauperis] if the allegation of poverty is untrue, or if satisfied that the action is frivolous or malicious.

28 U.S.C. § 1915(d).

We have held that when a court dismisses a pro se complaint for failure to state a claim, the court should draft a few sentences explaining to the plaintiff the deficiencies and allow the plaintiff to amend. *Noll v. Carlson,* 809 F.2d 1446, 1449 (9th Cir.1987); *Karim–Panahi v. Los Angeles Police Dept.,* 839 F.2d 621 (9th Cir.1988). Because pro se litigants are unskilled in the law, they are prone to pleading errors. Without guidance, amendments by these litigants are made without an understanding of the deficiencies and are usually insufficient to cure deficient pleadings. Thus, when instructing pro se litigants to amend, district courts should briefly explain the complaints' deficiencies so that the pro se plaintiffs will be better equipped to amend correctly. *Noll,* 809 F.2d at 1448. However, if it "is absolutely clear that the deficiencies of the complaint could not be cured by amendment," the district court may dismiss. *Franklin v. Murphy,* 745 F.2d 1221, 1228 n. 9 (9th Cir.1984) (quoting *Broughton v. Cutter Laboratories,* 622 F.2d 458, 460 (9th Cir.1980)).

■ The procedural due process claims before the district court do not appear sufficient on the face of the complaints. We have ruled that, because prison safety is paramount, the procedural due process rights of prisoners are adequately protected by post-segregation decisions that administrative segregation is justified. *Toussaint v. McCarthy,* 801 F.2d 1080, 1100 (9th Cir.1986), *cert. denied,* — U.S. —, 107 S.Ct. 2462, 95 L.Ed.2d 871 (1987). "[T]he due process clause does not require detailed written notice of charges, representation by counsel or counsel-substitute, an opportunity to present witnesses, or a written decision describing the reasons for placing the prisoner in administrative segregation." *Id.* at 1100–01. In this case, appellant alleges that he was placed in administrative segregation without written notice, an opportunity to present evidence, an opportunity to be represented by counsel or written justification; appellant did receive post-deprivation hearings. Appellant's claims fall squarely within *Toussaint's* holding. Therefore, he does not state a claim for violation of due process and no amendment could cure this deficiency. These claims should be dismissed.

■ The district court did not address the eighth amendment claims when it dismissed appellant's complaint. The eighth amendment proscribes punishments incompatible with "evolving standards of decency" such as those "so totally without penological justification that [they] result[ ] in the gratuitous infliction of suffering." *Hoptowit v. Ray,* 682 F.2d 1237, 1246 (9th Cir.1982) (quoting *Gregg v. Georgia,* 428 U.S. 153, 173, 96 S.Ct. 2909, 2925, 49 L.Ed.2d 859 (1976)). Appellant alleges that he had to sleep without a mattress for one night and without a blanket for an unspecified period of time, that he was not issued shoes for a month, and that he was physically and verbally abused by prison officials. "Prison officials have a duty to take reasonable steps to protect inmates from physical abuse." *Hoptowit,* 682 F.2d at 1250. Physical and verbal abuse by officials indicates a deliberate indifference by prison officials to the safety needs of prisoners; therefore, appellant has stated an eighth amendment claim based on physical and verbal abuse because such abuse is "totally without penological justification." *Id.* at 1237.

■ In addition, appellant may be able to state an eighth amendment claim based upon his allegation of deprivation of shoes for a month. Appellant has not alleged additional facts suggesting deliberate indifference or gratuitous infliction of suffering. He may, however, be able to state an eighth amendment claim with respect to

the shoes if he amends his complaint. He should be permitted an opportunity to amend.

Appellant alleges that he slept without a blanket for an unspecified amount of time in a room across from broken windows. Appellant similarly has alleged no additional facts to indicate wanton infliction of pain or deliberate indifference, but appellant should similarly be allowed to amend this claim of deprivation.

■ Appellant's allegation that he slept without a mattress for only one night is insufficient to state an eighth amendment violation and no amendment can alter that insufficiency. We affirm the district court's dismissal of his claim for one night's deprivation of a mattress.

The district court's dismissal of appellant's homosexual rape claims as "frivolous" under 28 U.S.C. § 1915(d) deserves more extensive discussion. For the purposes of determining whether a complaint is "frivolous," the court presumes that the plaintiff's allegations are true. *Franklin,* 745 F.2d at 1228. In addition, courts must construe allegations in pro se complaints liberally. *Shapley v. Nevada Bd. of State Prison Comm'rs,* 766 F.2d 404, 408 (9th Cir.1985).

If appellant's rape claims are not "frivolous," they may state claims for violation of both the eighth amendment and the fourteenth amendment. The eighth amendment dictates that prison officials may not be deliberately indifferent to the safety needs of inmates because such indifference may result in the unnecessary infliction of pain. *Hoptowit,* 682 F.2d at 1250. Appellant's allegations of rape by prison guards, if construed liberally, indicate deliberate indifference. His allegations that the guards allowed his rape by other prisoners, construed liberally, also indicate deliberate indifference.

■ In addition, prisoner beatings by guards involving excessive force amounting to brutality are deprivations of a liberty interest in violation of due process. *McRorie v. Shimoda,* 795 F.2d 780, 785 (9th Cir.1986). Appellant's allegations that he was raped by prison guards are no less troubling than the claims of beatings in *McRorie.* Therefore, they state a claim for violation of appellant's substantive due process rights.

Finally, insufficient protection of a prisoner resulting in harm inflicted by other inmates may also violate the prisoner's due process rights. *Youngberg v. Romeo,* 457 U.S. 307, 315–16, 102 S.Ct. 2452, 2457–58, 73 L.Ed.2d 28 (1982) (right to personal security protected by substantive due process and not extinguished by imprisonment); *Escamilla v. City of Santa Ana,* 796 F.2d 266, 269–70 (9th Cir.1986) (police have a duty to protect individuals if there is a "custodial relationship"). *See Orpiano v. Johnson,* 632 F.2d 1096, 1101 (4th Cir.1980) (if prison officials know of pervasive risk of harm to prisoner and fail to protect that prisoner, prisoner has a viable section 1983 claim for violation of his constitutional rights), *cert. denied,* 450 U.S. 929, 101 S.Ct. 1387, 67 L.Ed.2d 361 (1981). In this case, appellant alleges that prison guards allowed other inmates to enter his cell and rape him. This allegation, if not frivolous, appears to state a claim for violation of appellant's substantive due process rights.

The district court, however, deemed the claims frivolous. Disposition of the rape claims therefore requires some understanding of what is meant by "frivolous." This court has examined the "frivolous" standard under section 1915(d) at length in *Franklin v. Murphy,* 745 F.2d 1221 (9th Cir.1984). We there adopted procedures proposed by the Federal Judicial Center in *Recommended Procedures for Handling Prisoners' Civil Rights Cases in the Federal Courts* 57–58 (1980). That influential study, chaired by Judge Aldisert, recommended that if a prisoner meets the economic requirements for in forma pauperis status, the court should permit filing of the complaint under section 1915(a) and conduct a separate and independent inquiry into whether the action is "frivolous or malicious" under section 1915(d). It noted that the definition of "frivolous" may be influenced by Supreme Court cases discussing standards for dismissal of pro se complaints. *Id.* at 60–61. *See, e.g., Haines v.*

*Kerner,* 404 U.S. 519, 521, 92 S.Ct. 594, 596, 30 L.Ed.2d 652 *reh'g denied,* 405 U.S. 948, 92 S.Ct. 963, 30 L.Ed.2d 819 (1972). *See also, Anders v. California,* 386 U.S. 738, 744, 87 S.Ct. 1396, 1400, 18 L.Ed.2d 493 reh'g denied, 388 U.S. 924, 87 S.Ct. 2094, 18 L.Ed.2d 1377 (1967) (discussing in a different context that a contention is not frivolous if "any of the legal points [are] arguable on their merits").

With respect to legal sufficiency, the standard which has evolved is similar to that used to dismiss pro se complaints pursuant to Federal Rules of Civil Procedure, Rule 12(b)(6). *Franklin,* 745 F.2d at 1228. Under 12(b)(6), a pro se complaint should be dismissed upon proper motion if it fails to state a claim upon which relief may be granted; thus, the court will dismiss if it is "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Haines,* 404 U.S. at 521, 92 S.Ct. at 596 (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). *See Rizzo v. Dawson,* 778 F.2d 527, 530 (9th Cir.1985).

■ The concept of frivolousness under section 1915(d), however, is not identical to the 12(b)(6) legal standard. Section 1915(d) permits the district court upon its own motion to weed out patently meritless claims at an early stage. However, care must be taken that section 1915(d) dismissal is not abused. *See Bounds v. Smith,* 430 U.S. 817, 821, 97 S.Ct. 1491, 1494, 52 L.Ed.2d 72 (1977) (prisoners have constitutional right of access to the courts). In considering section 1915(d) dismissals we thus look not only to the face of the complaint and the matters actually pleaded, but beyond to whether the claims have arguable substance in law or fact. As the Seventh Circuit has explained:

Rule 12(b)(6) permits the dismissal of a complaint for failure to state a claim upon which relief can be granted only when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." (citations omitted). Under § 1915(d), in contrast, an *in forma pauperis, pro se* complaint can be dis-

missed *sua sponte* by the district court only if the petitioner cannot make any rational argument in law or fact which would entitle him or her to relief. Thus, the § 1915(d) test is less stringent than the Rule 12(b)(6) dismissal standard.

*Williams v. Faulkner,* 837 F.2d 304, 307 (7th Cir.1988). This is a more lenient standard because

[n]either [the opportunity to further develop a claim], nor the sharply honed adversarial exchange involved in a Rule 12(b)(6) motion and opposition, are present when dismissal is *sua sponte.* *Sua sponte* dismissal is therefore a much more truncated process than is dismissal under Rule 12(b)(6). In giving effect to the intent with which Congress created the narrow exception in section 1915(d) for *sua sponte* dismissals, this difference must be taken into account.

*Brandon v. Dist. of Columbia Bd. of Parole,* 734 F.2d 56, 59 (D.C.Cir.1984), *cert. denied,* 469 U.S. 1127, 105 S.Ct. 811, 83 L.Ed.2d 804 (1985).

Thus, in *Franklin* we held that pro se prisoner complaints may be dismissed on the court's own motion and prior to service, but only in limited circumstances; a district court may not dismiss an in forma pauperis complaint unless it has no "arguable substance in law [or] fact." *Franklin,* 745 F.2d at 1227 (adopting standard in *Watson v. Ault,* 525 F.2d 886, 892 (5th Cir.1976)). *See also Brandon,* 734 F.2d at 59 (claim not viable); *Crisafi v. Holland,* 655 F.2d 1305, 1307–08 (D.C.Cir.1981) (no suggestion of supporting facts); *Munz v. Parr,* 758 F.2d 1254, 1258 (8th Cir.1985) (face of complaint shows "insuperable bar to relief") (quoting *Jackson Sawmill Co. v. United States,* 580 F.2d 302, 306 (8th Cir.1978), *cert. denied,* 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979)).

■ We have recognized several possible bases which may justify a district court's decision to dismiss an in forma pauperis complaint as having no arguable substance in law or fact. First, a court may dismiss as frivolous complaints that recite bare legal conclusions without any supporting facts. *Franklin,* 745 F.2d at 1228. *See*

*Tripati v. First Nat'l Bank & Trust,* 821 F.2d 1368, 1370 (9th Cir.1987).

Second, a court may dismiss if the plaintiff's claims are redundant or barred by res judicata because of previous litigation. *Tripati,* 821 F.2d at 1370. *See Van Meter v. Morgan,* 518 F.2d 366, 368 (8th Cir.), *cert. denied,* 423 U.S. 896, 96 S.Ct. 198, 46 L.Ed.2d 129 (1975). The district court may review its own records to determine whether, given previous court documents, the plaintiff's claims are redundant. *Stiltner v. Rhay,* 322 F.2d 314, 316 (9th Cir.1963), *cert. denied,* 376 U.S. 920, 84 S.Ct. 678, 11 L.Ed.2d 615 (1964).

Third, we have observed that "[a]n action may be dismissed under section 1915(d) where the defense is complete and obvious from the face of the pleadings or the court's own records." *Franklin,* 745 F.2d 1221, 1228.

Fourth, a court may dismiss a claim that is founded on "wholly fanciful" factual allegations. *Id.* It appears that the district court viewed the rape allegations in this case as fanciful because it did not believe so many similar episodes could have occurred. However, the district court could not properly assess the credibility of the plaintiff's allegations, for we expressly rejected a standard of frivolousness which permitted the exercise of credibility discretion. *Id.*

■ In section 1915(d) dismissal of actions as "wholly fanciful," we must accordingly look to a standard which prevents dismissal on grounds of a credibility assessment. Such a standard is found in the principles of judicial notice. Indeed, in authorizing dismissal of complaints founded on "wholly fanciful" factual allegations in *Franklin,* we relied upon quoted authority in two other circuits applying a judicial notice standard in assessing "fanciful" allegations:

A court may dismiss as frivolous complaints reciting bare legal conclusions with no suggestion of supporting facts, or postulating events and circumstances of a wholly fanciful kind. Similarly, "[a] complaint conflicting with facts of which the district court may take judicial notice might also properly be dismissed under

section 1915(d)." *Taylor v. Gibson,* 529 F.2d 709, 717 (5th Cir.1976).

*Id.* (quoting *Crisafi v. Holland,* 655 F.2d 1305, 1307–08 (D.C.Cir.1981)). We therefore hold that a court may dismiss an action as frivolous if it is dependent upon allegations which conflict with facts of which a district court may take judicial notice.

The category of facts of which a district court may take judicial notice is a very narrow one; a judicially noticeable fact is one not subject to reasonable dispute because it is "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed.R.Evid. 201. *See* E. Cleary, *McCormick's Handbook of the Law of Evidence* § 329–30 (2d ed. 1972). Such a narrow standard is required if courts are to make state officials accountable for meritorious prisoner claims of constitutional violations. *See, e.g., Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), *reh'g denied,* 429 U.S. 1066, 97 S.Ct. 798, 50 L.Ed.2d 785 (1977). It is also necessary in order to avoid the waste caused by premature dismissals resulting in appeals and remand before consideration of defendant's answer.

Admittedly, it is tempting to eliminate the meritless complaint at the pleading stage. Unfortunately, [however], this "is another instance of judicial haste which in the long run makes waste," *Dioguardi v. Durning,* 139 F.2d 774, 775 (C.A. 2 1944) (Clark, J.) (citation omitted).

*Estelle,* 429 U.S. at 112–13, 97 S.Ct. at 295 (Stevens, J., dissenting). *See Sherman v. Yakahi,* 549 F.2d 1287, 1290 n. 5 (9th Cir. 1977) (quoting Justice Stevens); *Brandon,* 734 F.2d at 62; *Munz,* 758 F.2d at 1258. Only if the facts alleged are impossible in light of any judicially noticeable fact may the district court find a complaint "wholly fanciful" and hence without arguable substance in law or fact.

The facts alleged here are not of that nature. Appellant alleged homosexual rapes committed between July, 1982 and December, 1984 by various prison officials and inmates at both Folsom Prison and the California Medical Facility at Vacaville. He alleges rape because of evidence of

needle marks on his arms in the mornings, leading him to believe he had been drugged, feces on his undergarments and skin problems.

■ The magistrate and district court considered appellant's homosexual rape claims frivolous because appellant's five complaints alleged rapes over a period of 2 years, by various persons with similar modus operandi. It is hard to believe so many similar incidents occurred. But we cannot take judicial notice that none of them occurred. There is no indisputable source to tell us they did not happen. *See* Fed.R. Evid. 201. By determining the frivolousness of all of appellant's complaints as a group, the district court relied upon an improper determination by the magistrate that appellant's claims were not credible. This is not permissible. *Franklin*, 745 F.2d at 1228. The magistrate himself stated that "although each complaint, taken separately, is not necessarily frivolous, a different picture emerges from a reading of all five complaints together."

If the district court had reviewed appellant's complaints individually and had treated the factual allegations as presumptively truthful, it could not have dismissed them as frivolous because they are not "wholly fanciful"; appellant's allegations of needle marks on his arms and other evidence of homosexual rape present claims with an arguable basis in fact.

We affirm the district court's dismissal of appellant's procedural due process claim and his eighth amendment claim based on deprivation of a mattress. However, we reverse the district court's dismissal of the remaining eighth amendment claims because the district court never addressed them and never offered the appellant a chance to correct deficiencies through amendment. We reverse the district court's decision on the rape claims as well, because the dismissal was based upon credibility determinations impermissible under section 1915(d).

REVERSED AND REMANDED.

WALLACE, Circuit Judge, concurring:

I concur in Judge Schroeder's opinion insofar as it reverses the district court's dismissal of Hernandez's claims based upon alleged deprivation of footwear, rape, and other physical abuse. Under the controlling precedent of this circuit, *Noll v. Carlson*, 809 F.2d 1446 (9th Cir.1987), unless it is "absolutely clear" that a pro se civil rights plaintiff's complaint could not be amended to allege constitutional violations, the district court errs by dismissing the action without notifying the plaintiff of the complaint's deficiencies and allowing him leave to amend. *Id.* at 1449. Here, as in *Noll*, Hernandez amended his complaint, but did so without the benefit of a statement by the court notifying him of the deficiencies in his pleadings. *Id.* The magistrate's recommendations to the district court, which erroneously concluded that Hernandez's allegations were "wholly fanciful" because unlikely, did not serve as adequate notice of the complaint's deficiencies under *Noll*. Thus, while I agree with Judge Aldisert that Hernandez's various complaints failed to state claims upon which relief could be granted, *see* Aldisert, J., dissenting, reversal is required under *Noll* to allow Hernandez a chance to remedy the deficiencies in his complaint.

As Judge Aldisert points out in his persuasive dissent, it is not enough for a complaint to allege conclusions that are merely "possible"; a plaintiff must allege facts from which the liability of each defendant can rationally be inferred. I agree with Judge Schroeder that Hernandez should be allowed to amend his complaints, if he can, to add allegations that will establish the connection of each defendant to the deprivations claimed by Hernandez and that will establish that Hernandez has been the victim of unconstitutional conduct, rather than mere negligence. However, I write separately to emphasize that, should Hernandez fail to remedy the problems in his complaints after being informed of their deficiencies, his claims properly may be dismissed as frivolous for the reasons stated in Judge Aldisert's dissent.

ALDISERT, Circuit Judge, concurring and dissenting:

When Mr. Monroe and his family were routed out of bed in the middle of the night

by the Chicago police, and made to stand naked in their living room while the cops ransacked every room in their home, emptying drawers and ripping mattress covers, the Supreme Court took long overdue action. In *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), the Court resuscitated, if not resurrected, the remedy of the Civil Rights Act of 1874, the now familiar 42 U.S.C. § 1983. Since that day, this federal remedial statute has been successfully utilized to correct tens of thousands of civil rights violations of all description, in high school classrooms to maximum security wings of state prisons.

Section 1983 has been a major force in protecting the individual from countless abuses by the city, county, and state. We have become a more civilized society because of the protections it affords those under police arrest or confined to penal institutions. Thanks to section 1983, and concurrent prison reforms, we no longer tolerate the degrading experiences portrayed in film classics such as Paul Muni's powerful role as Burns in *"I Was a Fugitive from a Georgia Chain Gang,"* or Paul Newman's portrayal of *"Cool Hand Luke."* Nor do we tolerate the dehumanizing treatment that once existed in prisons, where an inmate was denuded of his dignity, stripped of his name, addressed by only an identification number, and constantly ran the risk of being brutally beaten or tossed into "the hole" indefinitely, at the sole whim of a prison guard.

It is with sympathy for the conditions of prison inmates, enthusiastic endorsement of the massive protection now extended to state prisoners by the filing or threat of filing of civil rights actions, and the profound sensitivity that must be extended to *pro se* petitions for relief, that I review the district court's dismissal of Mike Hernandez' complaints.

I join Judge Schroeder's opinion to the extent that it affirms the district court's dismissal of the procedural due process claim and the eighth amendment claim based on deprivation of a mattress. I do not agree with the analyses of the other claims set forth by Judges Wallace and Schroeder. I would affirm the judgment of the district court in all respects, for reasons other than those given by the district court.

Let it be understood at the outset that what divides this panel on the remaining claims is a very narrow issue. I do not read my colleagues' opinions as deciding that the plaintiff's many claims can, at this time, pass muster when measured against standards of frivolousness. I think the entire panel is unanimous in this respect. What divides us is that my colleagues seem to feel Hernandez was entitled to a *second* notice that his complaints were to be dismissed, and that, somehow, he can amend his complaints again (all three complaints have been amended at least once), and make factual averments sufficient to permit him to mount the hurdle of frivolity.

Thus, we disagree only on procedure. Because Hernandez' complaints are already fact-specific, setting forth a complete narrative of that which occurred first at Folsom prison and later at Vacaville, I believe that no amendment of facts can save the fatal deficiencies that permeate all his liability claims against the named defendants. The necessary factual predicate that forms the minor premise of his legal arguments can in no way be enlarged or altered to support a possible, let alone reasonable, inference of liability.

### I.

Where a complaint fails to state a claim on which relief can be granted, there are two levels in the preliminary proceedings at which the complaint may be dismissed. The first is under the authority of 28 U.S.C. § 1915(d), even prior to service of the complaint upon the defendant. *Franklin v. Murphy*, 745 F.2d 1221, 1226 (9th Cir. 1984) (*Franklin*). Under section 1915(d), the court may dismiss the case if satisfied that the action is frivolous. After service upon the defendant, the court may grant a motion for dismissal under Rule 12(b)(6), F.R.Civ.P.

The district court dismissed Hernandez' rape allegations as frivolous, basing its judgment on the recommendation of a mag-

istrate. The magistrate decided that each complaint, when read independently of the other complaints filed by Hernandez, "is not necessarily frivolous," ER 34 at 5, but that "a different picture emerges from a reading of all five complaints together." *Id.* The magistrate relied on the test for frivolity set out in *Franklin*—specifically, that the concept of frivolous embraces complaints "postulating events and circumstances of a wholly fanciful kind." *Franklin*, 745 F.2d at 1228 (quoting *Crisafi v. Holland*, 655 F.2d 1305, 1308 (D.C.Cir. 1981) (per curiam)). The magistrate found Hernandez' rape allegations "wholly fanciful" because they were reiterated in several different complaints alleging the same "modus operandi," but involved different prison officials and inmates at different institutions.

Like my colleagues, I would not accept the reasoning of the magistrate adopted by the district court, for under the circumstances of this case, that would amount to making credibility findings on the pleadings. As Judge Schroeder correctly points out, in a section 1915(d) adjudication, we must assume the credibility of the plaintiff's allegations unless they run counter to law, human behavior, or permissible inferences.

I would affirm the district court's dismissal for entirely different reasons, a practice permitted in this Circuit. *Hatch v. Reliance Ins. Co.*, 758 F.2d 409 (9th Cir.1985); *Salmeron v. United States*, 724 F.2d 1357, 1364 (9th Cir.1983); *Angle v. United States*, 709 F.2d 570, 573 (9th Cir.1983). I would hold that even if we credited every factual allegation in Hernandez' complaints, the complaints are frivolous and no opportunity to amend can possibly cure that deficiency.

In each of the complaints at issue in the three appeals before us, Hernandez included a very detailed statement of facts. These facts, if believed, do not make out a claim "on the basis of reasonable inferences and not mere speculation." *Edward J. Sweeney & Sons, Inc. v. Texaco*, 637 F.2d 105, 111 (3d Cir.1980).

The district court's dismissal of the complaints as frivolous is subject to *de novo* review by this court. *Tripati v. First Nat'l Bank & Trust*, 821 F.2d 1368, 1369 (9th Cir.1987); *Rizzo v. Dawson*, 778 F.2d 527, 530 (9th Cir.1985). Our role here is to determine whether, as a matter of law, the claims are critically deficient of the minimum quantum of fact, reason, and law from which the plaintiff might possibly be entitled to relief. In exercising this review, I proceed on the assumption that "plaintiff's sworn allegations are ... uncontroverted and entitled to the usual presumption of truth." *Franklin*, 745 F.2d at 1228.

My ultimate conclusion is that the multitude of allegations expressed in the separate complaints filed in the district court do not qualify for further consideration. I agree with the district court's conclusion that the allegations are frivolous and therefore should be dismissed under 28 U.S.C. § 1915(d).

## II.

My point of beginning is a discussion of how the courts have interpreted the statutory term "frivolous." "The court may dismiss the case ... if satisfied that the action is frivolous or malicious." 28 U.S.C. § 1915(d). The most familiar court definition of frivolous, that in *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967), is phrased in the negative. *Anders* states that a contention is not frivolous if "any of the legal points [are] arguable on their merits." *Id.* at 744, 87 S.Ct. at 1400. In *Franklin*, this court determined that an action is frivolous if it lacks "arguable substance in law and fact." *Franklin*, 745 F.2d at 1227. This Circuit has accepted the frivolity analysis formulated by the Court of Appeals for the D.C. Circuit:

A court may dismiss as frivolous complaints reciting bare legal conclusions with no suggestion of supporting facts, or postulating events and circumstances of a wholly fanciful kind. Similarly, 'a complaint conflicting with facts of which the district court may take judicial notice might also properly be dismissed under

section 1915(d).' *Taylor v. Gibson,* 529 F.2d 709, 717 (5th Cir.1976).

*Id.* at 1228 (quoting *Crisafi v. Holland,* 655 F.2d 1305, 1307–08 (D.C.Cir.1981) (per curiam)).

This analysis sets out *three* possible standards for dismissing a complaint as frivolous: 1) does the complaint recite bare legal conclusions without supporting facts? 2) does the complaint postulate wholly fanciful events or circumstances? 3) does the complaint conflict with facts of which a court may take judicial notice? (A fourth standard—redundancy—was added by *Tripati v. First Nat'l Bank & Trust,* 821 F.2d 1368, 1370 (9th Cir.1987)). Judge Schroeder combines the second and third *Franklin* standards. She sees the "judicial notice" and the "wholly fanciful" tests as being one in the same. *See* Schroeder op. at 1426–27 ("Only if the facts alleged are impossible in light of any judicially noticeable fact may the district court find a complaint 'wholly fanciful' and hence without arguable substance in law or fact.")

As I read *Franklin,* the "wholly fanciful" and "judicial notice" standards are two separate possible bases for dismissing a complaint as frivolous. Under *Franklin,* a court may indeed dismiss an action as frivolous if it is "dependent upon allegations which conflict with facts of which a district court may take judicial notice." Schroeder op. at 1426. However, a court may *also* dismiss as frivolous an action "postulating events or circumstances of a wholly fanciful kind." *Franklin* at 1228. I find Hernandez' allegations to be indisputably wholly fanciful.

"Frivolous," which *Webster's Third New International* defines as "of little weight or importance: having no basis in law or fact," is derived from the Latin "friuolus," which meant "worthless, trashy, insignificant, trifling, silly and empty." I believe that Hernandez' complaint comes within either the English or Latin definitions established.

I turn now to the procedures utilized in the federal courts in handling prisoner civil rights cases, and the relationship of those procedures to the determination of frivolity.

## III.

As Judge Schroeder notes, this court has adopted the recommendations of the Prisoner Civil Rights Committee of the Federal Judicial Center (the Committee) relating to section 1915(d) cases:

> [The Committee] recommends that the court make the frivolity determination before issuing process to protect defendants from the expense and inconvenience of answering a frivolous complaint. Federal Judicial Center, *Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts* 59 (1980).

> .     .     .     .     .

> We find persuasive the reasoning of the cases holding that courts may dismiss frivolous actions filed in forma pauperis before service of process and adopt the procedure recommended by the Federal Judicial Center and applied here by the district court.

*Franklin,* 745 F.2d at 1226–27.

Because I served as the Federal Judicial Center Committee's chair, reference to the reasoning that undergirded the Committee's efforts to guide federal courts in the use of section 1915(d) may be of some help. I begin with a statement of the Committee's purposes:

> First, to evaluate the handling of prisoner conditions-of-confinement cases with the purpose of recommending such changes as are desirable to increase the capacity to give prompt relief to meritorious prisoner cases.

> Second, to help federal judges, magistrates, and staff personnel deal effectively and efficiently with these difficult-to-handle cases.

The Federal Judicial Center, *Recommended Procedures for Handling Prisoner Civil Rights Cases in the Federal Courts* xi (1980) [hereinafter "Report"]. The polestar that guided the Committee's deliberations and hearings was to devise methods to preserve meritorious cases

when faced with the statistical reality that most prisoner civil rights complaints are totally devoid of merit:

It is generally agreed that most prisoner rights cases are frivolous and ought to be dismissed under even the most liberal definition of frivolity. The Freund Report [named after Professor Paul Freund of Harvard who chaired the Study Group on the Caseload of the Supreme Court, 57 F.R.D. 573 (1972)] concluded that: "The number of these petitions found to have merit is very small, both proportionately and absolutely." In fiscal year 1979, 9,943 of 10,301 or 96.5 percent of § 1983 cases terminated in federal court were dismissed or otherwise concluded prior to trial.

Report at 9–10 (footnotes omitted).

To understand the complex problems facing the federal judiciary today in this area, one must look at the crushing avalanche of *pro se* prisoner petitions that inundate our court system. No other judicial system in the world is exposed to this phenomenon, because all other systems require that court pleadings be filed by counsel. Recording the experience of only the past 20 years, we can note both the increasing number of prisoner civil rights actions filed and the minuscule percentage of those cases that reach trial:

| Year | Prisoner Civil Rights Cases | Percentage Reaching Trial |
|---|---|---|
| 1968 | 1,369 | 2.3 |
| 1969 | 1,631 | 2.6 |
| 1970 | 2,144 | 2.4 |
| 1971 | 2,260 | 3.3 |
| 1972 | 2,877 | 3.4 |
| 1973 | 3,500 | 4.9 |
| 1974 | 4,159 | 5.3 |
| 1975 | 5,033 | 5.8 |
| 1976 | 5,858 | 4.4 |
| 1977 | 6,679 | 5.6 |
| 1978 | 8,883 | 4.6 |
| 1979 | 10,301 | 3.5 |
| 1980 | 10,807 | 2.3 |
| 1981 | 13,248 | 4.4 |
| 1982 | 14,187 | 4.9 |
| 1983 | 16,434 | 4.8 |
| 1984 | 17,437 | 5.1 |
| 1985 | 17,271 | 4.0 |
| 1986 | 19,304 | 4.4 |
| 1987 | 22,127 | 3.9 |

Table C.4, Annual Reports of the Director of the Administrative Office of the United States Courts (1968–1987). As of June 30, 1987, there were 2,825 prisoner civil rights cases pending in the district courts of the Ninth Circuit, *id.*, Table C.3A (1987), and 2,765 such cases had been terminated during the court year, *id.*, Table C.3B (1987). Thus, in a 20–year period the cases have increased from 1,369 a year to 22,127, an ominous 1600 percent, and this Circuit has borne its proportionate share of the stress.

### A.

This being so, we must bade fealty to three important goals: we must ensure that meritorious prisoner civil rights cases do not fall between the cracks. The "cry wolf!" syndrome can affect federal judges, especially district judges and magistrates, with what we may describe as a kind of jurisprudential weariness or fatigue, akin to what the Germans call *Weltschmerz*, that sets in from examining countless meritless petitions. At the same time, we must "protect defendants from the expense and inconvenience of answering a frivolous complaint." *Franklin*, 745 F.2d at 1226. Above all, we must respect our obligation to the federal judiciary to provide equal justice to all who seek relief in the federal courts and to ensure the maximum delivery of legal services to all litigants—*pro se* as well as those represented by counsel.

In 1980, when the case load was only half that of today, the Committee attempted to resolve these tensions by recommending that in prisoner civil rights complaints the plaintiff go beyond the requirement of ordinary notice pleading. The Committee would require the plaintiff to set forth the facts supporting his claim. Admittedly, this is a departure from the notice pleading requirement set forth in Rule 8, F.R.Civ.P., but the Committee reasoned that Rule 8 and other pleading rules were designed for cases in which the plaintiff was represented by counsel. This exception for *pro se* prisoner complaints was designed to assist the prisoner in setting forth at the earliest possible moment the facts that formed the basis of his complaint so that the claim could be properly evaluated. The Commit-

tee also reasoned that this would encourage the prisoner *pro se* plaintiff to tell his or her story without fear of being injured in the pleading process by not conforming to the niceties of pleading rules that were designed for the use and comprehension of persons learned in the law. Because in virtually all prisoner civil rights cases the plaintiff is *pro se*, we suggested Federal Judicial Center Form 1, which is now distributed to all federal district court clerk offices and to most state correctional institutions for use by inmates. Paragraph IV of Form 1 clearly instructs the plaintiff:

### Statement of Claim

[State here as briefly as possible the *facts* of your case. Describe how each defendant is involved. Include also the names of other persons involved, dates, and places. Do not give any legal arguments or cite any cases or statutes. If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. Use as much space as you need. Attach extra sheet if necessary.]

Report at 92. The Eastern District of California, from which this appeal arises, utilizes this form. *See, e.g.,* Civ. S–84–1074–LKK. Indeed, the clerks in every district court within this circuit probably utilize the form. To assist inmates in preparing complaints, our Committee recommended that the form also be distributed to major penal institutions. The use of the form is widespread nationally and seems to be uniformly well received.

### B.

The Committee also gave serious attention and detailed study to the question of dismissing complaints under section 1915(d):

Where a complaint fails to state a claim for which relief may be granted *and for which no amendment can properly state such a claim,* there are two levels in the preliminary proceedings where the complaint may be dismissed. The first may be under the authority of 28 U.S.C. § 1915(d) even prior to service of the complaint upon the defendant. After service upon the defendant, the court may entertain a motion for dismissal under Rule 12(b)(6).

Report at 63 (emphasis added). The Committee recommended "dismissal with no opportunity to respond when the complaint is irreparably frivolous or malicious." *Id.* at 60, citing *Worley v. California Dep't of Corrections,* 432 F.2d 769, 770 (9th Cir. 1970) (no claim was stated and there was no deficiency in the allegations that could be overcome by amendment). In this respect, the Committee accepted Judge Hamley's 1965 statement that a district judge may dismiss a prisoner's civil rights complaint without opportunity to amend where "it clearly appears from the complaint that the deficiency cannot be overcome by amendment." *Armstrong v. Rushing,* 352 F.2d 836, 837 (9th Cir.1965). This rule was restated in *Potter v. McCall,* 433 F.2d 1087, 1088 (9th Cir.1970). It has continued to be the rule in this Circuit. *Noll v. Carlson,* 809 F.2d 1446, 1448 (9th Cir.1987); *Broughton v. Cutter Labs.,* 622 F.2d 458, 460 (9th Cir.1980).

It is on this narrow ground that my colleagues and I part company in all three appeals. They require the district judge to give additional notice of his intention to dismiss and advise the plaintiff of his right to amend his complaint once again. I take the position that (1) the plaintiff already had notice of the court's intention to dismiss—he was served with a copy of the magistrate's findings and recommendations of dismissal under section 1915(d), to which he filed exceptions, and (2) given the specific nature of the plaintiff's theories of liability, the factual deficiencies in his complaints "cannot be overcome by amendment." *Noll,* 809 F.2d at 1448; *Potter,* 433 F.2d at 1088; *Armstrong,* 352 F.2d at 837.

I will now address the specifics of Hernandez' complaints. In each of the complaints, Hernandez followed to the letter the Committee's recommended Form 1, provided by the Eastern District of California. In each complaint, he set forth a section captioned "Statement of Facts." This

point is critical. Hernandez did not rely on notice pleading in describing his claims.

## IV.

These are excerpts from Hernandez' Statement of Facts in his complaint alleging sexual assault by prison guards at Folsom Prison:

1. Plaintiff alleges that he was sexually assaulted and raped by correctional officers in cell 1303, building 2, on the night of July 29, 1982, and during the early morning hours of July 30, 1982, during the first watch.

2. On the 30th day of July, 1982, plaintiff discovered evidence and signs of rape on his clothing, specifically a tee-shirt. On that same morning, on his way back from breakfast, to building 2, plaintiff overheard several correctional officers and inmates who work as tier tenders, taunting and ridiculing him. They were telling each other that plaintiff was getting raped in prison, and that plaintiff was raped the night before.

3. On or about the 5th day of August, 1982, plaintiff was interviewed.... At this interview, plaintiff complained to both Lieutenant Gonzalez and the other members of the committee that he had found signs and evidence of rape and sexual assault on his clothing. Plaintiff displayed his tee-shirt to the committee members, so they could see some feces stains....

4. Plaintiff further alleges that normally he does not sleep as many hours as he had slept on the night of July 29, 1982, for on that specific night he went to sleep early, at approximately 8:00 P.M., and did not wake up until after ten (10) hours, the following morning, at approximately 6:00 A.M. Plaintiff normally sleeps five (5) hours without awakening, but on the night of July 29, 1982, he slept about twice as much as he normally sleeps.

ER 43 at 5–6.

In this complaint, Hernandez alleges a rape by unknown correctional officers on the basis of putative inferences only. There is no direct evidence that a rape occurred. Hernandez concludes he was raped because he found fecal stains on his teeshirt, slept later than usual, and received taunts from fellow inmates. He suggests that he could not have known about the actual victimizing of his body because he slept ten hours that night instead of his normal five. Thus, he would like us to draw two inferences: that he was drugged, and that because he was drugged, he was not aware he had been raped by unknown correctional officers.

## A.

An inference is a process by which one proposition (a conclusion) is arrived at and affirmed on the basis of one or more other propositions, which are accepted as the starting point of the process. Stebbing suggests that an "[i]nference ... may be defined as a mental process in which a thinker passes from the apprehension of something given, the datum, to something, the conclusion, related in a certain way to the datum, and accepted only because the datum has been accepted."[1] Whether an inference is deductive or inductive depends upon the nature of the relationship between the proposition that is given and the proposition that is inferred. Hernandez asks us to draw an inductive inference, a conclusion from a congeries of particulars. From the particular facts asserted in his complaint, he asks us to draw the conclusion by induction that the defendants can be held liable.

But whether an inference is valid, that is, whether the conclusion is sound and free from flaw, depends upon its logical force; the question of logical force is in turn based on the reasonableness of the conclusion requested to be drawn. Accordingly, inferences are permitted to be drawn in the law only to the extent that known human experience dictates that certain consequences can and do follow from basic circumstantial facts. What has been said in another context is relevant here:

---

1. L. Stebbing, *A Modern Introduction to Logic* 211–212 (6th ed. 1947).

The court's role is especially crucial when, as here, the plaintiff's case, and therefore the defendant's liability, is based solely on circumstantial evidence. The illegal action must be inferred from the facts shown at trial. Inferred factual conclusions based on circumstantial evidence are permitted only when, and to the extent that, human experience indicates a probability that certain consequences can and do follow from the basic circumstantial facts. The inferences that the court permits the jury to educe in a courtroom do not differ significantly from inferences that rational beings reach daily in informally accepting a probability or arriving at a conclusion when presented with some hard, or basic evidence. A court permits the jury to draw inferences because of this shared experience in human endeavors. *See generally,* McCormick, Handbook of the Law of Evidence 289–96 (2d edition 1972).

*Edward J. Sweeney & Sons, Inc. v. Texaco,* 637 F.2d 105, 116 (3d Cir.1980). I conclude that, under the facts pleaded here, the allegations do not qualify as sound, valid inferences. The test for a permissible inference is not whether human experience indicates a remote *possibility* that a particular conclusion may be drawn. Rather, the test is probability: was it more probable than not that these consequences can and do follow from the narrative or historical facts. In my view, applying the most generous of standards, the desired conclusion may not be drawn from the hard facts pleaded here. I further conclude that Hernandez can allege no other narrative *facts* by amendment that will permit that conclusion to be drawn.

### B.

Even if we were to accept Hernandez' inference, that he was in fact the victim of a rape, that inference still does not point to the liability of the named defendants. The Civil Rights Act, under which this action was filed, provides:

Every person who, under color of [state law] ... subjects, or causes to be subjected, any citizen of the United States

... to the deprivation of any rights, privileges, or immunities secured by the Constitution ... shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.

The statute requires that there be an actual connection or link between the actions of the defendants and the deprivation alleged to have been suffered by the plaintiff. *See Monell v. Department of Social Servs.,* 436 U.S. 658, 692, 98 S.Ct. 2018, 2036, 56 L.Ed.2d 611 (1978); *see also Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976). This court has held that "[a] person 'subjects' another to the deprivation of a constitutional right, within the meaning of section 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which complaint is made." *Johnson v. Duffy,* 588 F.2d 740, 743 (9th Cir.1978).

The law is clear that the liability of supervisory personnel must be based on more than merely their right to control others. *Monell, supra,* 436 U.S. at 694 n. 58, 98 S.Ct. at 2037 n. 58. At a minimum, appellant is required to show a causal connection between the alleged harms suffered and appellees' actions. The appellees must be shown to be responsible for setting in motion a series of acts by others, which the appellees knew or reasonably should have known would cause the others to inflict constitutional injury upon the plaintiff. *Id.* 743–44.

Conclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim under the Civil Rights Act.... The plaintiff must allege with at least some degree of particularity overt acts which defendants engaged in that support the plaintiff's claim.

*Jones v. Community Redev. Agency,* 733 F.2d 646, 649 (9th Cir.1984) (citations omitted).

The defendants are the Director of Corrections, the prison Superintendent, and members of the disciplinary and classifica-

tion committees. The only "facts" supposedly establishing sexual assault were the discovery of feces on appellant's tee-shirt and ridicule by unidentified correctional officers. No single fact whatsoever was alleged that would establish the personal involvement in any alleged rape of appellant by any of the defendants, either by way of personal participation or by way of knowledge of the participation of other inmates or correctional officers. Even if we credit every word of Hernandez' Statement of Facts, the allegations are insufficient to hold the defendants liable because they lack the quality of arguable merit.

### C.

The fatality can be precisely stated: we can infer conclusions imposing liability on the basis of circumstantial evidence only when, and to the extent that, human experience indicates a probability that certain consequences can and do follow from basic circumstantial facts. The basic relevant circumstantial facts here—sleeping late and finding fecal stains on a tee-shirt—cannot reasonably lead to the conclusion that the appellees were responsible for the alleged violations. This is fatal to Hernandez' case and no amendment can bring it back to life. No amended statement can establish a causal connection between the alleged harms suffered and appellees' actions.

### V.

We now turn to the Folsom Prison eighth amendment claims:

14. Plaintiff alleges that he was placed in cell 812 in the security housing unit, and was forced to sleep on a sheet metal bunk without a mattress, for one night. Plaintiff was forced to borrow one blanket from inmate Raymond Rodriguez, who was housed in the cell next to his cell. Plaintiff was subjected to very uncomfortable bedding and suffered from freezing weather conditions, as he was housed in a cell, located across from broken windows.

15. Plaintiff alleges that he was denied footwear, because no officer in the security housing unit issued him a pair of shoes to wear after he was brought from the psychiatric ward; he was forced to go about without shoes for approximately thirty (30) days.

ER 43 at 8.

The eighth amendment proscribes "cruel and unusual punishments." U.S. Const. amend. viii. This proscription embodies "broad and idealistic concepts of dignity, civilized standards, humanity, and decency," *Jackson v. Bishop*, 404 F.2d 571, 579 (8th Cir.1968), against which we must evaluate penal treatment. The amendment draws its meaning from "the evolving standards of decency that mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101, 78 S.Ct. 590, 598, 2 L.Ed.2d 630 (1958). Conduct and punishments which are incompatible with those standards, or which "involve the unnecessary and wanton infliction of pain," are prohibited. *Estelle v. Gamble*, 429 U.S. 97, 102–03, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976).

Measured against these concepts, sleeping in a bunk without a mattress for one night cannot possibly rise to the dignity of an eighth amendment deprivation. Here the majority and I agree. But I disagree with Judge Schroeder's description of the facts pleaded by Hernandez on the blanket claim: "Appellant alleges that he slept without a blanket for an unspecified amount of time in a room across from broken windows." Judge Schroeder's opinion at 1424. Judge Schroeder's characterization of Hernandez' factual pleading has no support whatsoever in the complaint. Rather, as indicated above, all Hernandez alleged was that he "was forced to borrow one blanket from Raymond Rodriguez, who was housed in the cell next to his cell." This certainly does not qualify as an eighth amendment deprivation. Even if we assume that going without shoes for 30 days involves "the unnecessary and wanton infliction of pain," Hernandez' allegation that an officer in the security housing unit failed to issue him a pair of shoes does not rise to a colorable claim against the defendants named here, because no one of those

defendants was alleged to be the officer distributing the shoes.

Under *Rizzo v. Goode,* 423 U.S. 362, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976), and *Monell v. Department of Social Servs.,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), the mere right to control others, without any control or direction having been exercised, and without any failure to supervise, is not enough to support section 1983 liability. Accordingly, I believe that this eighth amendment contention is controlled by the important precept set forth in *May v. Enomoto,* 633 F.2d 164 (9th Cir.1980), to wit, that under the Civil Rights Act, a defendant cannot be charged with responsibility for neglectful acts of subordinates, absent that defendant's direction or participation. *Id.* at 167. The Civil Rights Act does not permit liability under respondeat superior. *See Monell,* 436 U.S. at 694, 98 S.Ct. at 2037.

I would affirm the district court's dismissal of these claims. Although neither the magistrate nor the district judge discussed them in the written recommendations or in the opinion, it cannot be said that the district court disregarded these questions. The entire complaint was dismissed; the complaint included paragraphs 14 and 15; therefore, there can be no question that these allegations were dismissed. As a reviewing court, we are in the same position as a district court to test these contentions to determine whether they have arguable merit. In my view, they do not.

### VI.

I turn now to the first Vacaville case. In his recommendations, the magistrate referred to the facts Hernandez would have alleged had he been permitted to amend his complaint. *See* ER 21 at 4. The district court adopted the magistrate's findings and recommendations. I, too, shall proceed as if the proposed amended complaint were here before me:

1. On or about the 29th day of July, 1983, plaintiff alleges that he was ordered to move out of cell L–361, L-wing, unit IV, on the third floor, into the N–2 wing dorm, by Correctional Sergeant Anderson.

5. Plaintiff alleges that on the 30th day of July, 1983, he filed an inmate/parolee appeal form (602) with defendant Hartman's and defendant Ingle's office, wherein plaintiff complained about housing conditions and also claimed that he had found signs and evidence of sexual assault and rape on his clothing, and that he believed one or more inmates housed in the same dorm as him, assaulted and raped him on the night of July 29, 1983....

6. Subsequently, plaintiff alleges that he discovered four needle puncture wounds on different parts of his body: on the 2nd day of August, 1983, plaintiff displayed one needle wound on his right wrist to defendant Ingle; on the 3rd day of August, 1983, plaintiff displayed the same needle wound to his supervisor, at the law library, and two more needle wounds plaintiff had discovered on the calf of each leg; on the 6th day of August, 1983, plaintiff discovered a fourth needle wound on his left wrist, and displayed this needle wound to Officer Kreger, the N–2 wing dorm officer on the second watch, on the same day plaintiff was given permission to move out of the N–2 wing dorm and into a single-man cell in the same wing.

9. All the events described in paragraph five (5) were witnessed by inmate Harold Pierce; his affidavit is attached to this amended pleading as Exhibit G. (Exhibit G reads: "Harold Pierce hereby declares: ... On the night of July 29, 1983, I witnessed inmate Dushane B–71187 and inmate Milliard B–30802 assault and rape inmate Mike Hernandez as he lay asleep in bed 206 in the N–2 unit dorm.")

15. Plaintiff alleges that on or about the 15th and 16th days of December, 1983, he found signs and evidence of rape and sexual assault on his clothing and reported it to Officer B. Da Rosa on December 17, 1983....

ER 11 at 3–6.

The foregoing facts, if believed, do not make out a valid constitutional claim

against the prison official defendants under either the due process clause or the eighth amendment. Again, Hernandez offers no direct evidence that he was raped. He relies only on the suggestion that somehow he was drugged and then raped while asleep. His only effective evidence is the affidavit of Harold Pierce describing events allegedly occurring on the night of July 29, 1983. That affidavit may have been sufficient to establish a state tort claim against inmates Dushane and Milliard, but it is insufficient to establish that the named defendants knew or should have known of these events and taken steps to prevent them. *See Procunier v. Navarette*, 434 U.S. 555, 562, 98 S.Ct. 855, 860, 55 L.Ed.2d 24 (1978); *May v. Enomoto*, 633 F.2d 164, 167 (9th Cir.1980); *Johnson v. Duffy*, 588 F.2d 740, 745 (9th Cir.1978).

### VII.

The remaining appeal also involves events at Vacaville. In this complaint, appellant alleged he was raped as follows:

1. During the night of January 12–13, 1984, by defendant McIntyre and two inmates, based on needle marks;

2. During the night of January 26–27, 1984, also by McIntyre and two inmates, based on needle marks;

3. During the night of March 22–23, 1984, by unknown persons but believed to be defendant Perdoni, based on finding needle marks on his right wrist on the morning of March 23;

4. During the night of June 28–29, 1984, by unknown persons but believed to be defendant Perdoni, based on finding needle marks on his left arm, right wrist and right ankle on the morning of June 29;

5. On August 4 and August 23, 1984, during the 1:00 P.M.–3:00 P.M. watch, believed to be by defendant Perdoni, based on appellant's discovery of needle marks;

6. On September 11, 1984, during the 1:00 P.M.–3:00 P.M. watch, by defendants Fitzgerald and Price, based on discovery of a needle mark on his left thumb;

7. On September 16, 1984, during the 1:30 P.M.–3:00 P.M., watch, by defendant Price, based on discovery of needle marks on his left arm and right wrist;

8. On September 21, 1984, shortly before 7:00 A.M. by defendants Perdoni and/or McIntyre, based on awakening feeling ill and nauseous and discovering needle marks on his abdomen.

9. During the night of September 26–27, 1984, by defendant McIntyre, based on awakening to discover needle marks on his left arm and abdomen;

10. On October 8, 1984, by defendant McIntyre, based on awakening to discover a needle mark on his right arm;

11. During the night of October 26–27 or 27–28, 1984, by defendant McIntyre, based on awakening on October 28 to discover needle marks on his left arm and abdomen;

12. During the night of November 22–23 or 23–24, 1984, by defendant McIntyre, based on awakening on November 25 to discover three needle marks on his left wrist;

13. During the early morning of December 5, 1984, by defendant Tomlinson, based on awakening to discover needle marks on his left arm;

14. During the early morning hours of December 9, 1984, by defendant Tomlinson, based on awakening to discover needle marks on his left wrist and right leg; and,

15. During the early morning hours of December 10, 1984, by defendant McIntyre, based on awakening to discover a needle mark on his right arm.

Appellant also alleged that as a result of these various sexual assaults and drug injections, he suffered fevers, bacteriological skin infections, headaches, nausea, sinus infections and facial scarring, and that institutional physicians refused his request for antibiotic medication.

### A.

To place this appeal in perspective, it is helpful at this point to summarize the other two appeals before us. In appeal No. 86–2139, in his *amended* complaint, Hernandez

said he had been raped by correctional officers at Folsom Prison on July 29, 1982. He reached this conclusion in the hypothesis that he found "signs of rape" on his tee-shirt, to wit, fecal stains, and that on the morning of July 30, 1982, he was ridiculed by unidentified correctional officers and inmates about having been raped the night before. He had no personal recollection of having been raped and made no identification of his supposed rapist. In appeal No. 87–1693, his *proposed amended* complaint contends that he was again raped—this time at Vacaville—*on precisely the same day of the year as the Folsom rape, but one year later, on July 29, 1983.* Again, he concluded that he had been raped because he found "evidence" of sexual assault on his clothing, *viz,* feces and semen stains on his shirts. He also claimed that he found a needle wound on his right wrist on August 2, 1983; two needle wounds, one on each of his two legs, on August 3, 1983; and another needle wound on August 6, 1983. This time he alleged that his rapists were inmates, not correctional officers. Here, too, he had no personal knowledge of having been raped and made no identification of his alleged rapists.

### B.

I now turn to an analysis of the massive complaint involving events at Vacaville in 1984. Here, Hernandez alleged that he had been raped 21, repeat 21, times. Hernandez named the Superintendent of the California Medical Facility at Vacaville, a correctional lieutenant, and six correctional officers as defendants. Of the alleged 21 acts of rape, four were allegedly committed by inmates. Although Correctional Officer McIntyre supposedly committed nine of these rapes, appellant's complaint contains no fact capable of establishing that McIntyre, directly or by inference, or any of the other defendants, assaulted him. Here, too, he has no personal recollection of having experienced these savage assaults. His conclusions are based solely on the alleged discovery of needle punctures on his body. After these repeated acts, he complained he suffered only bacteria and acne on his face.

Irrespective of the outcome of this litigation, it must be acknowledged that Hernandez has established a world record capable of qualifying for the Guinness Book of Records: the only person who has been raped 28 separate times without knowing at the time that this was happening to him. Suffice it to say, as an experienced student and researcher in prisoner civil rights petitions, I believe that these three appeals go beyond the pale of frivolity. They are sheer and utter nonsense. They can be understood only by realizing that the appellant was diagnosed at Folsom Prison as an inmate requiring psychiatric treatment, that he was ordered transferred for this purpose, and that at the time of these appeals he is a patient at the Atascadero State Hospital. *See* ER, cover page.

### VIII.

Even assuming appellant's rape fantasy had some basis in rationality, his complaints are utterly devoid of any allegations establishing the personal involvement of any of the defendants. His contentions depend upon the following prosyllogisms and episyllogisms:

### A.

*Major Premise:* Some needle marks are signs of drug injection.
*Minor Premise:* I awoke with some needle marks.
*Conclusion:* Therefore, I was drugged.

### B.

*Major Premise:* One who is drugged can be raped without his knowledge.
*Minor Premise:* I was drugged.
*Conclusion:* Therefore, I was raped.

### C.

*Major Premise:* Those correctional officials who are involved in or knowledgeable of inmate rapes are liable.
*Minor Premise:* Defendants are correctional officials.

*Conclusion:* Therefore, defendants are liable.

Both fallacies of form and material fallacies inhere in each of these three arguments. Rules of syllogistic logic, first identified by Aristotle, and universally acknowledged by all logicians, are involved here.[2] Syllogism "A" represents the fallacy of the undistributed middle term:[3] In a formally valid categorical syllogism, the middle term must be distributed in at least one of the premises. If either the minor term or the major term is distributed in the conclusion, it must be distributed in the premise in which it originates.[4] Here, the middle term "needle marks" is undistributed in both the major and minor premises. It does not necessarily follow that all needle marks are evidence of drug ingestion simply because *some* are. *See, e.g., Spencer v. Texas*, 385 U.S. 554, 569–570, 87 S.Ct. 648, 657, 17 L.Ed.2d 606 (1967) (Warren, C.J., dissenting).

Syllogism "B" discloses the formal fallacy of the illicit major term. Here, the major term in the syllogism ("raped") is undistributed in the major premise ("can be raped"), but distributed in the conclusion ("was raped"). The resulting fallacy is obvious. Hundreds of physical or mental consequences can possibly follow injection or ingestion of drugs; being raped is only one possible consequence. Syllogism "C" violates a fundamental rule of categorical syllogisms: "A valid standard-form categorical syllogism must contain exactly three terms, each of which is used in the same sense throughout the argument." Copi, *supra* note 2, at 217. In this case, the middle term, "correctional officials," is used in a different sense in the minor premise than it is in the major premise, where it refers to "correctional officials who are involved or knowledgeable of inmate rapes." This syllogism also exhibits the fallacy of the undistributed middle. The middle term, "those correctional officials who are involved or knowledgeable of inmate rapes" is undistributed in the major premise. The term "correctional officials" is also undistributed in the minor premise because it refers only to the defendant-correctional officials, not the entire universe of correctional officials.

But even if Hernandez' arguments met the requirements of formal logical form, they would still contain fatal defects. The arguments contain material fallacies, that is, errors or evasions that appear only through an analysis of the meaning of the terms, rather than an analysis of the logical form. For example, each syllogism is a *non sequitur*, an argument exhibiting the lack of a logical connection. From the mix of pleaded facts—needle marks, fecal stains on a tee-shirt, sleeping later than usual on one occasion—any conclusion pinning liability on the defendants here is a paradigmatic *non sequitur*. *See* materials collected in R. Aldisert, *The Judicial Process* 626–57 (1976).

## IX.

At a very minimum, appellant is required to show a causal connection between the alleged harms suffered and the actions of the defendants. Hernandez' theory that he was raped is based only on the factual allegation that he discovered needle marks on his body the morning after the alleged incidents.

As a matter of law, the conclusion that he had been raped cannot be drawn as a permissible, let alone a reasonable, inference from the needle marks; a fortiori, the presence of the needle marks as a major premise cannot by any logical process lead

---

**2.** *See* I. Copi, *Introduction to Logic* 201–02, 217–18 (7th ed.) (1986); J. Cooley, *A Primer of Formal Logic* 306 (1942); J. Creighton, *An Introduction to Logic* 139 (1958); R. Eaton, *General Logic* 95 (1931); W. Jevon, *Elementary Lessons in Logic* 127 (1965); L. Stebbing, *A Modern Introduction to Logic* 88 (1948).

**3.** Copi, *supra*, note 2, at 219–20. The three terms of the categorical syllogism are "middle,"

"major," and "minor." A term is "distributed" if it refers to the whole of its class; if it refers to only part of its class, it is "undistributed."

**4.** "For the two terms of the conclusion really to be connected through the third, at least one of them must be related to the *whole* of the class designated by the third or middle term." Copi, *supra* note 2, at 219.

to a conclusion implicating the named correctional officials as perpetrators of the rapes.

But what is of paramount importance here is that no amendment of facts in the complaint can cure this fatality given the theory advanced and the inferences required. This is a classic example of the precept set forth in the *Worley, Armstrong,* and *Noll* line of cases—if it clearly appears that the deficiency in the complaint cannot be overcome by amendment, the district court may dismiss under section 1915(d) without genuflecting to the needless ritual of giving the plaintiff the opportunity to amend a *second* time before entering an order of dismissal. This precept was reaffirmed as recently as April 26, 1988, by this court in *Albrecht v. Lund,* 845 F.2d 193, 195 (9th Cir.1988). ("If the district court determines that the 'allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency,' then the dismissal without leave to amend is proper.") (quoting *Schreiber Distrib. Co. v. Serv–Well Furniture Co.,* 806 F.2d 1393, 1401 (9th Cir. 1986)).

I would affirm the judgment of the district court in all respects for the reasons stated herein. The grand purpose of prisoner civil rights petitions under section 1983 is to insure that the structured society within penal institutions possesses the minimum accoutrements of civilized order. It is to eliminate savage and barbarous treatment. It should not be prostituted by the hallucinations of a troubled man. And that is what we have here.